BURKE HEALTH INVESTORS, L.L.C. D/B/A BURKE HEALTH CARE CENTER, PETITIONER/APPELLANT v. N.C. DEPARTMENT OF HUMAN RESOURCES, DIVISION OF FACILITY SERVICES, CERTIFICATE OF NEED SECTION, RESPONDENT/APPELLEE, AND CAROLINA HEALTH CARE CENTER, OF BURKE, L.L.C., RESPONDENT-INTERVENOR/APPELLEE

No. COA98-1399

(Filed 16 November 1999)

### 1. Hospitals— certificate of need—application—no improper amendment

A certificate of need (CON) applicant did not impermissibly amend its application when it commented during the review process that it had made a typographical error in the private pay rate and a transcription error in the working capital requirement. The applicant neither sought to amend its application to set forth the higher pay rate nor requested that the Department accept the higher rate and the transcription error was apparent on the face of the application because the correct figure was clearly shown in another section and was relied upon by the Department. The information provided in the comments neither changed the application nor had any impact on the agency's determination.

### 2. Hospitals— certificate of need—application—Medicaid rates

The Department of Human Resources did not err in its decision that a certificate of need applicant's projected Medicaid rate was not in violation of Medicaid regulations and that the applicant had not overstated its projected Medicaid revenues where the rate projected by the applicant was the gross rate rather than the actual rate of reimbursement, but the applicant also projected a Medicaid payback which was lower than the projected private pay rates, as required, and which was found to be reasonable by the Department.

### 3. Hospitals— certificate of need—application—errors— insignificant

The Department of Human Resources' decision to grant a certificate of need was not arbitrary or capricious and was not made upon unlawful procedure where the errors pointed out by petitioner in the winning applicant's application were insignificant and did not affect the feasibility of the project.

**4. Hospitals— certificate of need—application—financial feasibility**

The Department of Human Resources did not err by approving a certificate of need application because it was allegedly financially infeasible where a letter of interest was sufficient evidence of a bank's intent to commit funds, the immateriality of a $750 shortfall was supported by evidence of personal assets which were more than sufficient to cover the shortfall, and a challenged line of credit and source of funds were not relied upon by the department because other assets exceeded the total costs of the project.

**5. Hospitals— certificate of need—conditional approval**

The Department of Human Resources did not act inappropriately by approving a certificate of need application subject to certain conditions where the conditions were not essential to the approval and did not render the application nonconforming. The practice of conditioning applications is authorized by N.C.G.S § 131E-186 and N.C.G.S.§ 131E-87 (a) and has been approved by the Court of Appeals.

**6. Hospitals— certificate of need—proper procedure**

The Department of Human Resources adhered to the procedure in *Britthaven, Inc. v. N.C. Dept. of Human Resources,* 118 N.C. App. 379, in granting a certificate of need where it first analyzed each individual application to determine the extent to which each application conformed to the statutory criteria, then entered exhaustive findings with respect to the relative merits of the applications before concluding that one application was comparatively superior.

Appeal by petitioner Burke Health Investors, L.L.C., from the final agency decision entered 6 July 1998 by the North Carolina Department of Health and Human Services. Heard in the Court of Appeals 25 August 1999.

*Smith Helms Mulliss & Moore, L.L.P., by Maureen Demarest Murray and Susan M. Fradenburg, for Burke Health Investors, L.L.C., petitioner-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General Melissa L. Trippe, for the State.*

*Bode, Call, & Stroupe, L.L.P., by Robert V. Bode, S. Todd Hemphill, and Anthony D. Taibi, for Carolina Health Care Center, L.L.C., respondent-intervenor-appellee.*

MARTIN, Judge.

Petitioner-appellant Burke Health Investors, L.L.C., ("Burke") appeals from a final decision of the North Carolina Department of Health and Human Services (formerly Department of Human Resources) ("the Department") to issue a Certificate of Need to respondent-intervenor-appellee Carolina Health Care Center, L.L.C., ("Carolina") for ninety nursing facility beds in Burke County.

The 1997 State Medical Facilities Plan established a need for ninety nursing facility beds in Burke County. Ten applicants, including Burke and Carolina, filed competing applications with the Department's Division of Facility Services, CON Section, for a Certificate of Need to fulfill this need. On 27 June 1997, the CON Section completed the review process prescribed by G.S. § 131E-185 and issued its written decision conditionally approving Carolina's application and denying approval of all of the competing applications.

Burke and another unsuccessful applicant, which is no longer involved in this proceeding, petitioned for contested case hearings pursuant to G.S. § 131E-188(a). An administrative law judge ("ALJ") issued recommended decisions essentially advising that neither Burke's application nor Carolina's application conformed with statutory criteria for a CON and that neither application should be approved. On 6 July 1998, the Department issued its Final Decision reversing the recommended decision of the ALJ and affirming the initial decision of the CON Section to approve Carolina's application for a Certificate of Need and to disapprove Burke's application. Burke appeals the final agency decision directly to this Court pursuant to G.S. § 131E-188(b).

The standard of judicial review of a final decision of the Department of Health and Human Services, appealed pursuant to G.S. § 131E-188(b), is governed by G.S. § 150B-51(b), which provides, in pertinent part:

(b) Standard of Review.—. . .[T]he court reviewing a final [Agency] decision may affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the agency's decision if the substantial rights òf the peti-

tioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150(b)-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

Where the appealing party alleges that the agency made an error of law, seeking review under subsections (1), (2), (3) or (4), the agency's decision is reviewed *de novo*, meaning that this Court looks at the question anew. *Walker v. N.C. Dept. of Human Resources*, 100 N.C. App. 498, 397 S.E.2d 350 (1990), *disc. review denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). Where the appellant argues that the agency decision was unsupported by the evidence, or was arbitrary and capricious, the "whole record test" is applied. *Id.* The whole record test requires the reviewing court to examine all competent evidence in order to determine whether the agency decision is supported by substantial evidence. *Fearrington v. Univ. of North Carolina at Chapel Hill*, 126 N.C. App. 774, 487 S.E.2d 169 (1997). More than one standard of review may be utilized if the nature of the issues raised so requires. *Amanini v. North Carolina Dept. of Human Resources*, 114 N.C. App. 668, 443 S.E.2d 114 (1994).

I.

[1] Burke first argues the Department's decision was made upon unlawful procedure in that Carolina was permitted to amend its application in violation of CON regulation 10 N.C.A.C. 3R.0306, which prohibits an applicant from amending its application after the filing deadline. *See Presbyterian-Orthopaedic Hosp. v. N.C. Dept. of Human Resources*, 122 N.C. App. 529, 470 S.E.2d 831 (1996). Burke's contentions require a *de novo* standard of review.

In its application, Carolina stated a second year private pay skilled care rate of $121.43. In addition, Carolina stated that the total working capital required for the project was $93,203. Subsequently,

during the review process mandated by G.S. § 131E-185(a1), Carolina commented that it had made a typographical error in the private pay rate listed in the application and that the private pay rate should have been $127.43. In addition, Carolina commented that the working capital requirement of $93,203 listed in its application was a transcription error, but that the working capital requirement had been correctly listed as $181,639 in another section of the application. Burke contends these comments amounted to impermissible amendments to Carolina's application. We disagree.

While Carolina acknowledged the private pay rate error in its comments, it neither sought to amend its application to set forth the higher rate nor requested that the Department accept the higher rate; revenues using the lower rate were still financially feasible. The transcription error with respect to the required working capital was apparent on the face of the application; the correct figure was clearly shown in another section of the application and was relied upon by the Department in its analysis of the application. The information provided by Carolina in its comments neither changed its application nor had any impact on the agency's determination that the application met the statutory criteria. Therefore, its comments were not an unauthorized amendment to the application. *See In Re Conditional Approval of Certificate of Need*, 88 N.C. App. 563, 364 S.E.2d 150, *disc. review denied*, 322 N.C. 480, 370 S.E.2d 220 (1988); *Humana Hosp. Corp. v. Dept. of Human Resources*, 81 N.C. App. 628, 345 S.E.2d 235 (1986). The Department's determination that Carolina did not impermissibly amend its application was correct.

II.

**[2]** Burke also contends the department's decision was affected by error of law because Carolina's application violated State and Federal Medicaid requirements. This contention also requires a *de novo* standard of review.

In its application, Carolina listed a proposed skilled care Medicaid rate which was higher than its proposed skilled care semi-private rate. Under State and Federal Medicaid regulations, Medicaid payments may not exceed the rates charged private patients and a nursing facility is limited to the lesser pay rate. *CCH NC Medicare and Medicaid Guide* ¶ 15,622 at 6581-4 (1997). Burke argues that Carolina's application violated these regulations, and further, that because the revenues based on the proposed Medicaid rates proposed in Carolina's application were overstated, the application was

not financially feasible, was not cost effective, and did not conform to statutory criteria contained in G.S. § 131E-183(a)(4), (5), and (18a). We reject these contentions.

The Medicaid rate projected by Carolina was a gross Medicaid rate, based on a formula provided CON applicants by the CON Section. The Medicaid rate projected in the application was not the actual rate at which a facility is reimbursed for Medicaid patients; the actual rate is based on the facility's actual costs as reported to the Division of Medical Assistance at the end of each year and is generally lower than the gross rate projected by CON applicants. In its application, Carolina projected a Medicaid "payback" based upon the projected costs of its services. The Medicaid "payback" projected by Carolina results in a projected actual net Medicaid rate which is lower than its projected private pay rates. These projections of costs and revenues were found to be reasonable by the Department and Burke has taken no exception to this finding. Thus, we affirm the Department's decision that Carolina's projected Medicaid rate was not violative of Medicaid regulations and that Carolina did not overstate its projected Medicaid revenues.

III.

[3] Next Burke argues that the Department made findings based upon information contained in Carolina's application which the Department knew was incorrect. Therefore, Burke contends, the decision was made upon improper procedure and was arbitrary and capricious. These contentions require both *de novo* and whole record standards of review.

As examples of the incorrect information upon which it contends the Department relied, Burke points us to Carolina's error in stating the private pay skilled nursing care rate in its application and an error in Carolina's pro formas with respect to the cost of its medical director. However, as we have already noted, Carolina accepted the lower private pay rate stated in the application and the Department's analysis assumed those rates in assessing the financial feasibility of the project. Similarly, the Department's project analyst, Mr. Loftin, recognized the error in the stated cost for the medical director. Mr. Loftin then carefully scrutinized Carolina's financial data and determined that Carolina budgeted sufficient funds to pay for the position of medical director without affecting costs. The errors pointed out by Burke in its brief are insignificant, did not affect the feasibility of the project, and were considered in the Department's analysis of Carolina's

application. Thus, the Department's decision was not made upon unlawful procedure and was neither arbitrary nor capricious, having been based upon a comprehensive, logical and reasonable review of Carolina's application.

IV.

**[4]** Grouping seven assignments of error under its next argument, Burke contends the Department erred in approving Carolina's application because it was not financially feasible as required by G.S. § 131E-183(a)(5). Because Burke claims the financial information submitted by Carolina was insufficient to show the availability of funds for the project, we review its contentions utilizing a whole record standard of review.

The final decision of the Department found Carolina's application consistent with the review criterion set forth in G.S. § 131E-183(a)(5):

(5) Financial and operational projections for the project shall demonstrate the availability of funds for capital and operating needs as well as the immediate and long term financial feasibility of the proposal, based upon reasonable projections of the costs of and charges for providing health services by the person proposing the service.

After determining that the total expenditures necessary for the project totaled $3,282,626, the Department found that the following funds were available for the project: (1) a $2,325,000 First Union Bank Loan; (2) $112,899 in cash from Karen Waldron; (3) $1,613,438 of marketable securities belonging to Karen Waldron; (4) $300,000 in cash from Heywood Fralin; and (5) $508,730 of marketable securities belonging to Heywood Fralin, a total of $4,860,067, and exceeding the funds necessary for the project by over a million dollars.

Burke challenges both the availability and the amount of the bank loan, and the availability of two other funding sources listed in the Carolina application; a $4,000,000 line of credit, and cash and marketable assets of Elbert Waldron. Each of these challenges must fail.

The availability of the bank loan was evidenced by a letter of interest provided by First Union Bank. Citing *Retirement Villages, Inc. v. North Carolina Dept. of Human Resources*, 124 N.C. App. 495, 477 S.E.2d 697 (1996), Burke argues that First Union's letter of interest is too speculative, a "mere expression of interest," rather than a

specific intent to commit funds. Burke's reliance on *Retirement Villages* is misplaced.

In *Retirement Villages*, the applicant failed to provide sufficient evidence that all of the financial sources listed on the CON application were committed to the project. Beaver Properties, the applicant, planned to procure funding from Brian Center Management Corporation ("BCMC") and Brian Center Corporation ("BCC"). BCMC would receive its funding from NationsBank. NationsBank provided a letter indicating its interest in loaning BCMC the amount necessary for the project. BCC submitted a letter indicating its interest in loaning Beaver Properties a portion of the necessary funding. BCMC provided no letter indicating its intent to provide the remaining funds to Beaver Properties. In other words, Beaver Properties failed to evidence an essential link in the funding chain. No such problem is inherent in the present case. First Union expressed an interest in loaning $2,325,000 to Carolina, the applicant proposing the project. The letter of interest was sufficient evidence of First Union's intent to commit funds.

Burke also claimed that the amount of the loan was deficient because the loan amount listed in the letter of interest submitted by First Union was $750 less than the amount Carolina indicated they would borrow from First Union. The Department found: "This shortfall is not material because the personal assets of Heywood Fralin and Karen Waldron are more than sufficient to cover the $750 shortfall." As Burke does not challenge the availability of the Fralin and Waldron assets, the immateriality of the $750 shortfall is supported by sufficient evidence in the record.

Burke also argued that the project was not financially feasible because a $4,000,000 line of credit and certain funds alleged to be available through Elbert Waldron were not, in fact, available; no documentation was presented to evidence the line of credit, and Elbert Waldron was deceased. However, the Department found that Carolina had sufficient funds for the project "irrespective of the $4,000,000 line of credit referenced in the CHCC application." Further, finding number 31 stated that "the CON section did not rely upon the financial statements of Elbert Waldron in concluding that there were sufficient funds to finance its proposal." There is sufficient evidence in the record to support these findings; the bank loan and the unchallenged assets of Karen Waldron and Haywood Fralin exceed the total capital costs for the project. These assignments of error are overruled.

## V.

Burke next contends the Department erred when it approved Carolina's application and did not approve Burke's application. Burke contends Carolina's application did not meet all applicable criteria, as evidence by the CON Section's imposition of conditions upon its approval, and that Burke's application met all of the statutory criteria. Burke's argument presents essentially two questions; (1) whether the Department may find that an application is consistent with the statutory criteria while imposing conditions upon it; and (2) whether the Department erred by approving Carolina's application rather than Burke's. These contentions raise legal questions and we review them *de novo*.

## A.

[5] In its initial agency decision, the CON Section approved Carolina's application subject to certain conditions which included additional documentation of information contained in Carolina's application. Burke argues the Department acted inappropriately by imposing these conditions, asserting that the conditions would not have been necessary if Carolina's application had conformed to the statutory criteria. However, the practice of conditioning applications is authorized by the Certificate of Need statute itself, *see* N.C. Gen. Stat. § 131E-186 and N.C. Gen. Stat. § 131E-187(a), and has been approved by this Court in *Humana Hosp. Corp. v. North Carolina Dept. of Human Resources*, 81 N.C. App. 628, 632, 345 S.E.2d 235, 237 (1986), where we stated "the law does not require that applications for certificates of need be approved precisely as submitted or not at all, and it would be folly if it did so."

Moreover, the conditions placed upon Carolina's application were not essential to its approval. The application was conditioned upon the provision of documentation from Fralin and Waldron showing which of them would be responsible for the owner's equity portion of the capital expenses, and which would be responsible for the start up and initial operating expenses. This documentation was not crucial to a finding of financial feasibility, however, because the evidence shows that Fralin and Waldron intended the funding to be available for whatever purpose necessary. The funding itself is evidenced by copies of financial statements. The conditions did not render the application nonconforming.

B.

**[6]** Burke argues further that the decision to grant Carolina the certificate rather than Burke was made upon improper procedure. The procedure by which the Department is to weigh superiority among competing applications is not specifically mandated by statute. In *Britthaven, Inc. v. North Carolina Dept. of Human Resources*, 118 N.C. App. 379, 385, 455 S.E.2d 455, 460, *disc. review denied*, 451 N.C. 418, 461 S.E.2d 754 (1995), this Court noted that "[a] two stage process . . . is consistent with the language, purpose and overall scheme of the statute." The first of these steps requires the Department to "batch" all applications for competing proposals and determine whether each individual application conforms with the criteria of G.S. § 131E-183(a). *Id.* The second step requires the Department to decide which of the competing applications should be approved. Factors to consider include "whether and to what extent the applications meet the statutory and regulatory criteria, but it may also include other 'findings and conclusions upon which it based its decision.' " *Id.* at 385, 455 S.E.2d at 461 (quoting N.C. Gen. Stat. § 131E-186(b)). The Department adhered to this procedure in this case. It first analyzed each individual application to determine the extent to which each application conformed to the statutory criteria, then entered exhaustive findings with respect to the relative merits of the applications, comparing such things as Medicaid access, costs for services, operating costs, types of services, staffing, and location before concluding that Carolina's application was comparatively superior.

VI.

We have considered the remaining assignments of error brought forward in Burke's final argument and conclude they are without merit and do not entitle Burke to any relief. The Department's final agency decision granting Carolina a Certificate of Need is affirmed.

Affirmed.

Judges LEWIS and HUNTER concur.