MOORESVILLE HOSPITAL MANAGEMENT ASSOCIATES, INC. D/B/A LAKE NORMAN REGIONAL MEDICAL CENTER, PETITIONER v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF FACILITY SERVICES, CERTIFICATE OF NEED SECTION; ROBERT J. FITZGERALD, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE DIVISION OF FACILITY SERVICES; AND LEE B. HOFFMAN, IN HER OFFICIAL CAPACITY AS CHIEF OF THE CERTIFICATE OF NEED SECTION, RESPONDENTS AND THE PRESBYTERIAN HOSPITAL AND THE TOWN OF HUNTERSVILLE, RESPONDENT-INTERVENORS

No. COA03-899

(Filed 19 April 2005)

**1. Hospitals and Other Medical Facilities— certificate of need—standard of review**

The exclusion of the Certificate of Need Act from the standard of review in N.C.G.S § 150B-34(c), as well as the retention of the term "recommended decision," leaves undisturbed the scope and standard of review under N.C.G.S. § 150B-51 for appellate review of DHHS action under the CON Act.

**2. Hospitals and Other Medical Facilities— certificate of need—review of ALJ recommendation—new evidence**

A DHHS decision upholding a settlement in a hospital certificate of need dispute was remanded where DHHS heard new evidence after receiving the ALJ's recommended decision. The consideration of new evidence clearly violated N.C.G.S. § 150B-51(a).

**3. Hospitals and Other Medical Facilities— certificate of need dispute—settlement—procedures**

On remand, DHHS must follow the procedural safeguards for approval of applications and for initial decisions when issuing a certificate of need pursuant to a settlement after a final agency decision.

**4. Administrative Law— final agency decision—finality**

After an agency renders a final decision on the record before it, it is the province of the judiciary to review asserted errors in the decision and not the province of the agency to consider the matter further or anew. A final agency decision must be final in order to maintain procedural consistency and coherence.

MOORESVILLE HOSP. MGMT. ASSOCS. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[169 N.C. App. 641 (2005)]

**5. Hospitals and Other Medical Facilities— certificate of need—relocation of operating rooms—grandfather clause**

DHHS did not err in a certificate of need case by affirming an operating room settlement where the relocation of operating rooms met the requirements of the grandfather clause in a change in the certificate of need statutes. N.C.G.S. § 131E-176(16)u.

**6. Hospitals and Other Medical Facilities— certificate of need—PET settlement**

DHHS exceeded its statutory authority in affirming a PET scanners settlement regardless of whether a certificate of need had been issued; however, the two hospitals could obtain PET scanners by submitting new applications in accordance with normal CON procedure (which they had done and of which the Court of Appeals took judicial notice).

**7. Administrative Law— final agency decision—rejection of ALJ findings—specific reason not provided**

In a disputed certificate of need case decided on other grounds, DHHS did not provide a specific reason for rejection of ALJ findings as required by statute.

**8. Hospitals and Other Medical Facilities— certificate of need—procedural violations—hospital allowed to operate**

A hospital that opened under a certificate of need settlement agreement improperly approved after the final agency decision was allowed to continue operations pending remand because closing the hospital would cause hardship to the community and because the parties had acted in good faith.

Judge STEELMAN concurring in part and dissenting in part.

Appeal by petitioner from a Final Agency Decision issued 20 March 2003 by the North Carolina Department of Health and Human Services. Heard in the Court of Appeals 1 April 2004.

*McGuire Woods, L.L.P., by C. Ralph Kinsey, Jr., William G. Broaddus, and Smith Moore, L.L.P., by James G. Exum, Jr., Maureen Demarest Murray, and Susan M. Fradenburg, for petitioner-appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General James A. Wellons, for respondent-appellees.*

MOORESVILLE HOSP. MGMT. ASSOCS. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[169 N.C. App. 641 (2005)]

*Nelson, Mullins, Riley & Scarborough, L.L.P., by Noah H. Huffstetler, III, Denise M. Gunter, and Wallace C. Hollowell, III, for respondent-intervenor-appellees.*

CALABRIA, Judge.

Mooresville Hospital Management Associates, Inc., d/b/a Lake Norman Regional Medical Center ("Lake Norman") appeals a North Carolina Department of Health and Human Services final agency decision issued 20 March 2003 upholding two settlement agreements between the North Carolina Department of Health and Human Services, Division of Facility Services, Certificate of Need Section ("DHHS") and Presbyterian Hospital ("Presbyterian"), Forsyth Medical Center ("Forsyth"), and Novant Health, Inc. ("Novant"), Presbyterian and Forsyth's parent company. We affirm in part, reverse in part, and remand with instructions.

On 14 May 1999, Presbyterian submitted an application to DHHS (the "1999 application") for a certificate of need ("CON") to construct a hospital ("Presbyterian Hospital North") in Huntersville (the "hospital project" or the "project"). On 28 October 1999, DHHS denied the 1999 application. After an appeal to the Office of Administrative Hearings ("OAH"), an Administrative Law Judge ("ALJ") entered a recommended decision to issue a CON to Presbyterian. On 13 October 2000, DHHS issued a final agency decision rejecting the ALJ's recommended decision and denying the 1999 application. Presbyterian appealed the final agency decision to this Court.

While that appeal was pending before this Court, Presbyterian filed another CON application for the hospital project in September of 2001 (the "2001 application"). On 27 February 2002, DHHS denied the 2001 application, and approximately one month later, Presbyterian petitioned OAH to review the denial of the 2001 application. Presbyterian had two pending appeals at the same time: (1) the 1999 application appeal, before this Court and (2) the 2001 application appeal, before OAH.

On 5 April 2002, the Chief of the CON Section, Lee B. Hoffman ("Hoffman"), and the Director of the Division of Facility Services, Robert J. Fitzgerald ("Fitzgerald"), met with representatives of Presbyterian, Forsyth, and Novant. As a result of the meeting, the parties agreed to negotiate eight outstanding disputes, which were eventually reduced to two settlement agreements. Pertinent to this appeal, the following three disputes were settled: (1) the litigation surround-

MOORESVILLE HOSP. MGMT. ASSOCS. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[169 N.C. App. 641 (2005)]

ing Presbyterian's 1999 and 2001 applications, which DHHS agreed to negotiate only if Presbyterian submitted additional information on the hospital project (the "hospital settlement"); (2) Presbyterian's September 2001 request for approval, without a CON review, to relocate four operating rooms from a downtown Charlotte facility to a new facility in south Charlotte (the "OR settlement"); and (3) Presbyterian and Forsyth's appeal to superior court concerning DHHS' denial of their October 2001 requests for approval, without a CON review, to replace existing diagnostic health equipment at Presbyterian Hospital in Charlotte and Forsyth Medical Center with a Positron Emission Tomography Scanner ("PET scanner") at each location (the "PET settlement") (collectively the "settlements"). Hoffman and a Presbyterian representative reviewed the newly submitted information regarding the hospital project. Although Hoffman disagreed with Presbyterian's position that the newly submitted information satisfied all the required statutory criteria for issuance of a CON, Fitzgerald approved the hospital settlement along with the other two settlements on 8 May 2002.

The hospital settlement, prompted by the newly submitted information, provided for the immediate issuance of a CON for the hospital project based on updates and amendments to the 1999 application. In addition, the hospital settlement required Presbyterian to dismiss the appeal pending before this Court concerning the 1999 application, dismiss the contested case pending before OAH concerning the 2001 application, and withdraw the 2001 application. The OR settlement approved, without a CON review, Presbyterian's relocation of four operating rooms from a downtown Charlotte facility to a new facility in south Charlotte. The PET settlement stated Presbyterian and Forsyth could each acquire a PET scanner "on or after 1 July 2004" if (1) a CON had not been issued to either hospital by that date and (2) Presbyterian and Forsyth dismissed all pending litigation concerning acquisition of PET scanners.

Throughout the 1999 and 2001 applications, Lake Norman Regional Medical Center, located approximately eleven miles from the proposed site of the hospital project, opposed issuance of a CON for the project. Lake Norman was permitted to intervene in Presbyterian's cases at OAH and also in the appeal to this Court concerning the 1999 application. After the 2001 application was withdrawn, however, Lake Norman's opposition to the 2001 application was rendered moot and could not be sustained.

MOORESVILLE HOSP. MGMT. ASSOCS. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[169 N.C. App. 641 (2005)]

From the time DHHS rendered a final agency decision denying the 1999 application, in Lake Norman's favor, until issuance of the CON pursuant to the hospital settlement, DHHS did not provide Lake Norman notice or an opportunity to be heard regarding the settlement. Lake Norman did not learn of the settlements until 9 May 2002. On 24 May 2002, Lake Norman petitioned OAH for a contested case hearing concerning the propriety of the settlements. Both Presbyterian and the Town of Huntersville were allowed to intervene in support of issuance of the CON for the hospital project. On 26 November 2002, an ALJ issued a recommended decision granting summary judgment in favor of Lake Norman, setting aside the settlements, and withdrawing the issued CON for the hospital project. On 20 March 2003, DHHS entered a final agency decision rejecting the ALJ's recommended decision, upholding the settlements, and finding, *inter alia*, that the new information Presbyterian submitted during negotiations regarding the hospital project was sufficient to show the project's compliance with all the required statutory review criteria. On 21 April 2003, Lake Norman appealed DHHS' final decision to this Court. Presbyterian and the Town of Huntersville were permitted to intervene in the appeal.

I. The Scope and Standard of Review applicable to the CON Act

[1] Before addressing the issues on appeal, we must consider the effect of the 2000 amendments (effective 1 January 2001) to Chapter 150B of the North Carolina General Statutes, the North Carolina Administrative Procedure Act (the "NCAPA"), on the scope and standard of review applicable to final agency decisions under Article 9 of Chapter 131E of the North Carolina General Statutes (the "CON Act"). Prior to the 2000 amendments, N.C. Gen. Stat. § 150B-51 (1999) controlled the scope and standard of review for all final agency decisions made after a recommended decision by an ALJ. Under N.C. Gen. Stat. § 150B-51 (1999):

(a) . . . In reviewing a final decision in a contested case in which an [ALJ] made a *recommended decision*, the court shall make two initial determinations. First, the court shall determine whether the agency heard new evidence after receiving the *recommended decision*. If the court determines that the agency heard new evidence, the court shall reverse the decision or remand the case to the agency to enter a decision in accordance with the evidence in the official record. Second, if the agency did not adopt the *recommended decision*, the court shall determine whether the agency's decision states the specific reasons why the

MOORESVILLE HOSP. MGMT. ASSOCS. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[169 N.C. App. 641 (2005)]

agency did not adopt the *recommended decision.* If the court determines that the agency did not state specific reasons why it did not adopt a *recommended decision,* the court shall reverse the decision or remand the case to the agency to enter the specific reasons.

(b) . . . [T]he court reviewing a final decision may affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

    (1) In violation of constitutional provisions;

    (2) In excess of the statutory authority or jurisdiction of the agency;

    (3) Made upon unlawful procedure;

    (4) Affected by other error of law;

    (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

    (6) Arbitrary or capricious.

(Emphasis added). On appeal, "[w]here the appealing party alleges that the agency made an error of law, seeking review under [N.C. Gen. Stat. § 150B-51(b)] (1), (2), (3) or (4) [(1999)], the agency's decision is reviewed *de novo* . . . ." *Burke Health Investors v. N.C. Dep't of Hum. Res.,* 135 N.C. App. 568, 571, 522 S.E.2d 96, 98 (1999).

    Pursuant to the 2000 amendments to the NCAPA, N.C. Gen. Stat. § 150B-51 (2003) discards the term "recommended decision" in favor of "decision" and retains the prior scope and standard of review where "the agency adopted the [ALJ's] *decision*" but heightens the scope and standard of review where "the agency does not adopt the [ALJ's] *decision.*" N.C. Gen. Stat. § 150B-51(a1), (b), (c) (2003) (emphasis added); *Cape Med. Transp., Inc. v. N.C. Dep't of Health & Human Servs.,* 162 N.C. App. 14, 21-22, 590 S.E.2d 8, 13-14 (2004). Additionally, N.C. Gen. Stat. § 150B-36(b), (b1), (b2), and (b3) (2003) require the agency to adopt in its final decision the findings of fact and "the *decision* of the [ALJ] unless the agency demonstrates that [the findings of fact and decision are] clearly contrary to the preponderance of the admissible evidence." (Emphasis added).

MOORESVILLE HOSP. MGMT. ASSOCS. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[169 N.C. App. 641 (2005)]

Despite these amendments to the NCAPA, N.C. Gen. Stat. § 150B-34(c) (2003) provides:

> [I]n cases arising under [the CON Act], the [ALJ] shall make a *recommended decision* . . . that contains findings of fact and conclusions of law. A final decision shall be made by the agency in writing after review of the official record [prepared by OAH] and shall include findings of fact and conclusions of law. The final agency decision shall recite and address all of the facts set forth in the *recommended decision.* For each finding of fact in the *recommended decision* not adopted by the agency, the agency shall state the specific reason, based on the evidence, for not adopting the findings of fact and the agency's findings shall be supported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31. *The provisions of G.S. 150B-36(b), (b1), (b2), (b3), and (d), and G.S. 150B-51 do not apply to cases decided under this subsection.*

(Emphasis added). We construe N.C. Gen. Stat. § 150B-34(c) (2003)'s exclusion of the CON Act from the requirements of N.C. Gen. Stat. § 150B-36(b), (b1), (b2), (b3), and (d) (2003) and N.C. Gen. Stat. § 150B-51 (2003) as well as the retention of the term "recommended decision" to leave undisturbed the scope and standard of review applied under N.C. Gen. Stat. § 150B-51 (1999) for purposes of appellate review of DHHS' action under the CON Act. Having set forth the relevant standard of review, we now turn to the issues presented on appeal.

II. Alleged Error under N.C. Gen. Stat. § 150B-51 (1999)

**[2]** Lake Norman asserts the settlement procedure used by DHHS in reaching the hospital settlement violated the first prong of N.C. Gen. Stat. § 150B-51(a) (1999). Specifically, Lake Norman argues DHHS improperly considered new evidence in approving the hospital settlement after receiving the ALJ's recommended decision concerning the 1999 application. We agree.

As stated above, the first prong of N.C. Gen. Stat. § 150B-51(a) (1999) requires a court reviewing a final agency decision to "reverse the decision or remand the case . . . [for entry of] a decision in accordance with the evidence in the official record" if it "determines that the agency heard new evidence [after receiving an ALJ's recommended decision]." (Emphasis added). *See generally,* N.C. Gen. Stat. § 150B-37 (1999); N.C. Gen. Stat. § 150B-37 (2003) (providing that

MOORESVILLE HOSP. MGMT. ASSOCS. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[169 N.C. App. 641 (2005)]

OAH shall prepare an official record in a contested case and forward a copy of it with the ALJ's recommended decision to the agency making the final decision). Here, after receiving the ALJ's recommended decision concerning the 1999 application, DHHS heard new evidence in approving the hospital settlement based on updates to this application. Given the plain language and mandate of the statute, we conclude DHHS' consideration of new evidence clearly violated N.C. Gen. Stat. § 150B-51(a) (1999) and was erroneous. Furthermore, based on this prohibited new evidence, DHHS, in effect, rendered a "second final agency decision" regarding the 1999 application through settlement countermanding its original final agency decision. Accordingly, we reverse DHHS' final decision upholding the hospital settlement.

III. Alleged Errors under the CON Act

[3] Lake Norman alternatively asserts the procedure used by DHHS in approving the hospital settlement and issuing the CON for the hospital project violated several provisions of the CON Act. We agree.

Neither the CON Act nor case law addresses the procedure for settlement of CON disputes after a final agency decision. In determining the proper procedure, we must remember that, although N.C. Gen. Stat. § 150B-22 (2003) establishes a state policy directing agencies to settle disputes if possible, " '[a]n administrative agency is a creature of the statute creating it and has only those powers expressly granted to it or those powers included by necessary implication from the legislature grant of authority.' " *Boston v. N.C. Private Protective Services Bd.*, 96 N.C. App. 204, 207, 385 S.E.2d 148, 150-51 (1989) (quoting *In re Williams*, 58 N.C. App. 273, 279, 293 S.E.2d 680, 685 (1982). Therefore, DHHS' ability to settle and, through settlement, to exercise powers granted it by the legislature in the CON Act may not supercede other express requirements and limitations placed upon its exercise of those powers. Accordingly, we must interpret the CON Act, looking to the language of the act and the intent of the legislature, to discern the proper procedure for the settlement of a CON dispute after a final agency decision. *State ex rel. Cobey v. Simpson*, 333 N.C. 81, 90, 423 S.E.2d 759, 763 (1992) (stating the fundamental task in statutory interpretation "is to ascertain and adhere to the intent of the legislature"). We begin by reviewing the relevant provisions of the CON Act.

The CON Act was intended "to limit the construction of health care facilities in this state to those that the public needs and that can

IN THE COURT OF APPEALS          649

MOORESVILLE HOSP. MGMT. ASSOCS. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[169 N.C. App. 641 (2005)]

be operated efficiently and economically for their benefit." *In re Humana Hosp. Corp. v. N.C. Dept. of Human Resources*, 81 N.C. App. 628, 632, 345 S.E.2d 235, 237 (1986); N.C. Gen. Stat. § 131E-175 (2003). To effectuate this purpose, the legislature granted DHHS the authority to issue CONs only after a procedural process consisting, in relevant part, of application; agency review, administrative appeal, final agency decision, and judicial appeal.

Pursuant to the CON Act, if a proposed project requires a CON, the proponent of the project must properly submit an application. N.C. Gen. Stat. § 131E-178, 182 (2003). DHHS then reviews the application for a period normally not to exceed ninety days to determine whether a CON for the proposed project should issue. N.C. Gen. Stat. § 131E-185(a1) (2003). As an initial matter, DHHS determines "whether the applicant has complied with the statutory criteria contained in N.C. Gen. Stat. § 131E-183(a) [(2003)] and rules adopted by the agency [in N.C. Admin. Code tit. 10A, r. 14C.0100 through r. 14C.0502 (June 2004)]." *Living Centers-Southeast, Inc. v. N.C. Dep't of Health & Human Servs.*, 138 N.C. App. 572, 575, 532 S.E.2d 192, 194 (2000). In rendering a decision, DHHS is statutorily limited to approving, approving with conditions, or denying the application. N.C. Gen. Stat. § 131E-186(a) (2003).

Once DHHS renders "a decision . . . to issue, deny or withdraw a certificate of need or exemption or to issue a certificate of need pursuant to a settlement agreement with an applicant to the extent permitted by law," affected persons are afforded thirty days in which to petition OAH for a contested case hearing before an ALJ. N.C. Gen. Stat. § 131E-188(a) (2003); N.C. Admin. Code tit. 10A, r. 14C.0208. If an affected person does not file a petition for a contested case hearing after a decision to issue a CON, DHHS must issue a CON within thirty-five days of the decision. N.C. Gen. Stat. § 131E-187(a) (2003). If a petition is filed, N.C. Admin. Code tit. 10A, r. 14C.0401(a), a rule promulgated by DHHS in accordance with N.C. Gen. Stat. § 131E-187(a) and 188(a), provides that a CON will not be issued. DHHS must stay issuance until the official record is received following the contested case hearing; whereupon DHHS must make its final agency decision within thirty days and thereafter may issue the CON. N.C. Gen. Stat. § 131E-188(a); N.C. Gen. Stat. § 131E-187(b) (2003). The statutory time period for an "affected person who was a party in a contested case hearing [to appeal to the Court of Appeals is] . . . 30 days [from] the receipt of the written notice of final decision . . . ." N.C. Gen. Stat. § 131E-188(b) (2003).

650 IN THE COURT OF APPEALS

MOORESVILLE HOSP. MGMT. ASSOCS. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[169 N.C. App. 641 (2005)]

DHHS and Presbyterian, ostensibly, contend the procedural process outlined in the CON Act does not apply to approvals of CON settlements. However, N.C. Gen. Stat. § 131E-188(a) refers to approval of a settlement as "a *decision* [by DHHS]. . . to issue a certificate of need pursuant to a settlement agreement . . . ." Therefore, we construe such an approval to occupy the same procedural position as an initial "*decision* to 'approve' [or] 'approve with conditions,' . . . an application" under N.C. Gen. Stat. § 131E-186(a). This also compels construing the settlement agreement itself as being equivalent to a new application. Therefore, it follows that all procedural safeguards applying to application approval and initial decisions, as discussed above, apply equally to approval of settlements.

Accordingly, prior to approving a settlement, DHHS must determine that the project referenced in the settlement will be "consistent with or not in conflict with [the] criteria" enumerated under N.C. Gen. Stat. § 131E-183(a). After a decision to issue a CON pursuant to a settlement, DHHS must wait thirty days before issuing a CON so affected persons may request a contested case hearing. N.C. Gen. Stat. § 131E-187(a), 188(a); N.C. Admin. Code tit. 10A, r. 14C.0208. If a contested case hearing is requested, DHHS may not issue a CON pursuant to the settlement unless the "hearing has been withdrawn or the final agency decision has been made following [receipt of the official record and an ALJ recommended decision] . . ., and all applicable conditions of approval that can be satisfied . . . have been met." N.C. Gen. Stat. § 131E-187(b). *See also* N.C. Admin. Code tit. 10A, r. 14C.0401(a).

Applying this law to the facts in the instant case, several procedural and statutory errors are immediately apparent. First, Hoffman and a Presbyterian representative reviewed the newly submitted evidence regarding the hospital project. Hoffman disagreed with Presbyterian's position that the new evidence, in fact, satisfied all the statutory criteria or that the criteria were met by the hospital project, as referenced in the settlement, at the time of approval. Furthermore, no evidence in the record suggests Fitzgerald determined the new evidence satisfied the criteria or that the hospital project, as referenced in the settlement, complied before his approval of the hospital settlement. Nonetheless, DHHS issued the CON in violation of N.C. Gen. Stat. § 131E-183(a). Second, DHHS issued the CON immediately after approval of the hospital settlement in violation of N.C. Gen. Stat. § 131E-188(a) and its own agency rule, N.C. Admin. Code tit. 10A, r. 14C.0208, promulgated in accordance

MOORESVILLE HOSP. MGMT. ASSOCS. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[169 N.C. App. 641 (2005)]

with N.C. Gen. Stat. § 131E-188(a). Affected parties were not permitted the required thirty day time period to petition for a contested case hearing for the purpose of substantively challenging the hospital settlement prior to issuance of the CON. Third, even assuming *arguendo* DHHS determined compliance had been established, we would not be persuaded of the propriety of the hospital settlement because affected parties adverse to Presbyterian's position were excluded from presenting any argument as to non-compliance prior to issuance of the CON. *Cf. Firefighters v. Cleveland*, 478 U.S. 501, 529, 92 L. Ed. 2d 405, 428 (1986) (stating "an intervenor is entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree . . . ."); *State ex rel. Util. Comm'n v. Carolina Util. Customers Ass'n.*, 348 N.C. 452, 466, 500 S.E.2d 693, 703 (1998) (stating, in rate cases before the North Carolina Utilities Commission, "negotiation and settlement is subversive of due process and the legislative authority delegated to the Commission if it lacks representation of all the parties with a certified interest in the outcome of the proceeding").

In analyzing the issues in the instant case, we deem it appropriate to comment on our holding in *Bio-Medical Applications of N.C., Inc. v. N.C. Dep't of Hum. Res.*, 136 N.C. App. 103, 523 S.E.2d 677 (1999), which also addresses a settlement under the CON Act. In that case, Bio-Medical asserted all the statutory criteria were not met by a project approved pursuant to a settlement between DHHS and Dialysis Care of North Carolina, which was entered into after an initial DHHS decision to deny Dialysis Care's CON application but prior to a final agency decision. *Id.*, 136 N.C. App. at 108-09, 523 S.E.2d at 680-81. Bio-Medical appealed both the settlement between DHHS and Dialysis Care and DHHS' final decision affirming issuance of the CON pursuant to the settlement. *Id.* This Court held that DHHS erred by approving the settlement before establishing that Dialysis Care's project complied with the statutory criteria. *Id.* Nevertheless, because satisfactory evidence of compliance was provided during the subsequent contested case hearing, this Court upheld DHHS' final decision affirming issuance of the CON under the settlement because any "mistakes or omissions" under the settlement had been corrected, and there was no prejudice to Bio-Medical. *Id.* Therefore, *Bio-Medical Applications* reiterates that, in exercising its authority under the CON Act, whether via normal application procedure or settlement, DHHS remains obligated to ensure that a proposed project meets all the statutory criteria before approving the issuance of a CON. *Id.* In affirming DHHS' final decision, this Court noted the

MOORESVILLE HOSP. MGMT. ASSOCS. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[169 N.C. App. 641 (2005)]

"unusual procedural posture" of *Bio-Medical Applications* in that Bio-Medical appealed only the settlement, which dealt solely with the criteria left unresolved in the original review, and DHHS' final decision, which corrected a failure to establish compliance at the time of settlement approval. *Id.* We further note DHHS had not already rendered a final agency decision on the official record when it initially approved the settlement. *Id.* We do not deem it prudent to expand the scope of *Bio-Medical Applications* to cases where, as here, DHHS had rendered a final agency decision based on the official record denying issuance of a CON before the settlement negotiations occurred and before the settlement was approved.

[4] Furthermore, we must respectfully disagree with the dissent in that neither the statutes nor case law cited by the dissent have allowed an agency in North Carolina to effectively countermand its original final agency decision with a different final agency decision. Indeed, in order to maintain procedural consistency and coherence, a final agency decision must have finality. After an agency renders a final decision on the record before it, it is the province of the judiciary to review asserted errors in the decision, not the province of the agency to consider the matter further or anew. Moreover, the dissent notes Lake Norman "had a full and complete opportunity to litigate and challenge the settlement agreements[;]" however, we note that prior to this "review," a CON had already issued.

In sum, we hold DHHS must adhere to the procedural safeguards for application approval and initial decisions when issuing CONs pursuant to settlements. Our holding ensures compliance with the mandates of the CON Act as well as the dictates of this Court's precedent, protects the rights of affected persons, and upholds the CON Act's purpose to regulate health care facility construction for the public benefit. Accordingly, on remand, DHHS must follow the procedures outlined above in considering the hospital settlement anew.

IV. The OR Settlement

[5] Lake Norman asserts DHHS erred in its final agency decision by affirming the OR settlement. Specifically, Lake Norman argues DHHS exceeded its authority in the OR settlement by permitting the relocation of four operating rooms from a downtown Charlotte facility to a new facility in south Charlotte without a CON review. We disagree.

Under N.C. Gen. Stat. § 131E-176(16)u (2003), a CON is required to relocate "an operating room or operating rooms . . . [to a location]

IN THE COURT OF APPEALS          653

MOORESVILLE HOSP. MGMT. ASSOCS. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[169 N.C. App. 641 (2005)]

separated by more than a public right-of-way adjacent to the grounds where the operating room is or operating rooms are currently located." This requirement became effective 23 June 2001 but was subject to the following "grandfather clause":

> "This act shall not apply to any project which was not a new institutional health service as defined in G.S. 131E-176(16) prior to the effective date of this act and for which there has been a capital expenditure exceeding fifty thousand dollars ($50,000) or there was a legally binding obligation for a capital expenditure exceeding fifty thousand dollars ($50,000) in effect on or before the effective date of this act and which was reasonably expected to be completed by December 31, 2002."

*Id.* (Editor's Note) (quoting Act of June 13, 2001, ch. 242, sec. 5, 2001 N.C. Sess. Laws 640-41). Prior to 23 June 2001, the relocation of operating rooms was not defined as "a new institutional health service" requiring issuance of a CON. *See* N.C. Gen. Stat. § 131E-176(16) (1999).

In the instant case, on or about 11 April 2001, Presbyterian entered into a binding obligation with an architectural firm for services relating to the relocation of the operating rooms for a fee of ten percent of the construction cost. Estimated fees at that time ranged from $110,000 to $130,000 and were subsequently adjusted downward to $73,500 on 14 June 2001. Furthermore, at the time of DHHS' approval of the OR settlement, the architect projected mid-December 2002 as the completion date for the relocation. Accordingly, Presbyterian's operating room relocation met the requirements of the "grandfather clause," and DHHS did not err in its final decision by affirming the OR settlement.

V. The PET Settlement

[6] Lake Norman asserts DHHS erred in its final agency decision by affirming the PET settlement. The settlement provided that DHHS would permit both Presbyterian and Forsyth's acquisition of a PET scanner "on or after 1 July 2004" regardless of whether a CON had been issued. To the extent the PET settlement forms the basis of Presbyterian and Forsyth's acquisition of PET scanners or implies permission to acquire a PET scanner irrespective of whether that acquisition is consistent with the CON Act, we summarily agree that DHHS exceeded its statutory authority and further analysis is unnecessary.

MOORESVILLE HOSP. MGMT. ASSOCS. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[169 N.C. App. 641 (2005)]

Nevertheless, Presbyterian and Forsyth may obtain PET scanners separate from the PET settlement by submitting new applications in accordance with normal CON procedure. Pursuant to motions before this Court, we take judicial notice that Presbyterian and Forsyth have, in fact, submitted new CON applications for the acquisition of PET scanners. *See Utilities Comm. v. Southern Bell Telephone Co.*, 289 N.C. 286, 288, 221 S.E.2d 322, 323 (1976) (observing that appellate courts may utilize the device of judicial notice). Nothing in the record before us indicates these new CON applications or DHHS' treatment of them might be linked improperly to the PET settlement. Accordingly, the proceedings associated with these new CON applications are not before this Court in this case, and we need not consider them.

## VI. Rejection of ALJ Findings of Fact in a Final Agency Decision

[7] In the interest of preventing future recurring error, we address Lake Norman's assertion that DHHS' final decision violated N.C. Gen. Stat. § 150B-34(c) by failing to provide a specific reason for its rejection of certain findings of fact by the ALJ. Under N.C. Gen. Stat. § 150B-34(c):

> The final agency decision shall recite and address all of the facts set forth in the recommended decision. For each finding of fact in the recommended decision not adopted by the agency, the agency shall state the *specific reason*, based on the evidence, for not adopting the findings of fact and the agency's findings shall be supported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31.

(Emphasis added).

DHHS' final decision adopted forty-nine of the ALJ's findings of fact and rejected fifty-two. In twenty-five of the rejections, DHHS did not provide a specific reason for the rejection as required by N.C. Gen. Stat. § 150B-34(c). For example, the rejection of finding of fact twelve stated, "I reject Finding of Fact No. 12 on the grounds that it mischaracterizes the Agency's actions. See Fitzgerald Dep., Vol. I, pp. 40-42." While this rejection indicates DHHS' determination that the finding was erroneous, no specific reason was provided for this rejection in violation of N.C. Gen. Stat. § 150B-34(c). The statutory requirement for providing a specific reason both guards against arbitrary decisions by the agency and facilitates meaningful appellate review, and we encourage DHHS to comply with the statutory requirements for rejecting findings of fact in future final agency decisions.

MOORESVILLE HOSP. MGMT. ASSOCS. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[169 N.C. App. 641 (2005)]

## VII. Conclusion

For the foregoing reasons, we reverse DHHS' final decision concerning the hospital settlement and remand the case to DHHS with instructions to: (1) withdraw the CON for the hospital project issued pursuant to the settlement and (2) consider the hospital settlement anew, adhering to the procedural safeguards applying to an application approval and initial decision. Should a contested case hearing occur after DHHS' decision concerning the hospital settlement, we reiterate DHHS' duty to provide a specific reason for each finding of fact rejected in its final agency decision. We affirm DHHS' final decision concerning the OR settlement on the basis of the "grandfather clause" applicable to N.C. Gen. Stat. § 131E-176(16)u. Any final agency decision based on the PET settlement's implication of permission from DHHS to acquire a PET scanner irrespective of whether that acquisition is consistent with the CON Act must fail, but we express no opinion regarding proceedings associated with independent CON applications.

[8] As a final matter, we note Presbyterian Hospital North became fully operational during the pendency of this appeal. We are faced, therefore, with balancing a strict application of the provisions of the CON Act against maintaining health care services currently provided by the operating hospital. It would be imprudent to close the hospital due to procedural irregularities in light of the hardship to the community. This is especially true in the instant case because the new evidence submitted during negotiations contains information relevant to a determination of compliance with the required statutory criteria. Furthermore, after considering the evidence in the record, as well as the parties' lack of guidance from the statutes and from judicial precedent, it appears that DHHS and Presbyterian proceeded in good faith, albeit erroneously, in attempting to settle this matter after the original final agency decision concerning the 1999 application. Now that this Court has set forth the appropriate settlement procedure, the possibility of such good faith attempts to settle by parties in future cases is vitiated, and such considerations will not avail parties to whom a CON has been issued in violation of these procedural safeguards. In the instant case, however, Presbyterian Hospital North may continue to operate (1) until the hospital settlement has upon remand been considered anew by DHHS following the procedures outlined above and (2) in the event a contested case hearing should occur following DHHS' initial decision, until DHHS enters a final agency decision.

MOORESVILLE HOSP. MGMT. ASSOCS. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[169 N.C. App. 641 (2005)]

Affirmed in part, reversed in part, and remanded with instructions.

Judge McGEE concurs.

Judge STEELMAN concurs in part and dissents in part in a separate opinion.

STEELMAN, Judge concurring in part and dissenting in part.

I concur in parts IV and V of the majority opinion, but must respectfully dissent as to the balance of the opinion.

N.C. Gen. Stat. § 131E-188(a) (2004) provides that:

> After a decision of the Department to issue, deny or withdraw a certificate of need or exemption or to issue a certificate of need pursuant to a settlement agreement with an applicant to the extent permitted by law, any affected person, as defined in subsection (c) of this section, shall be entitled to a contested case hearing under Article 3 of Chapter 150B of the General Statutes.

Pursuant to this provision and N.C. Gen. Stat. § 150B-22, the Department of Health and Human services (DHHS) was permitted to enter into settlement agreements with Presbyterian Hospital and Forsyth Memorial Hospital. Following these settlements, Mooresville Hospital initiated this contested case proceeding. Mooresville had a full and complete opportunity to litigate and challenge the settlement agreements. This procedure is clearly set forth in N.C. Gen. Stat. § 131E-188. The additional procedural requirements set forth in the majority opinion are not found in either Chapter 131E or Chapter 150B.

I would also hold that the findings contained in the Final Decision of DHHS are supported by the evidence, and petitioner can show no prejudice. *Bio-Medical Applications of N.C., Inc. v. North Carolina Dep't of Human Resources, Div. of Facility Servs., Certificate of Need Section,* 136 N.C. App. 103, 523 S.E.2d 677 (1999); *Britthaven, Inc. v. North Carolina Dep't of Human Resources, Div. of Facility Servs.,* 118 N.C. App. 379, 455 S.E.2d 455 (1995).

Under the provisions of N.C. Gen. Stat. § 150B-34(c), DHHS was required to "state the specific reason, based on the evidence, for not adopting the findings of fact" of the Administrative Law Judge (ALJ). This provision, applicable only to cases under Chapter 131E, sets forth a lesser standard for final agency decisions than under N.C.

Gen. Stat. § 150B-36, for rejection of the findings of fact of the ALJ. N.C. Gen. Stat. § 150B-36(b1) provides that in cases other than Chapter 131E, the final agency decision:

shall set forth separately and in detail the following:

(1) The reasons for not adopting the findings of fact.

(2) The evidence in the record relied upon by the agency in not adopting the finding of fact contained in the administrative law judge's decision.

I would hold that the specific reasons cited in the Final Decision of DHHS for rejecting the findings of fact of the ALJ were sufficient. The recommended decision of the ALJ was 39 pages long, and contained 101 separate findings of fact. The final Decision of DHHS was 103 pages long. Each rejected finding of the ALJ was set out verbatim and the reason for the rejection stated. Some of the reasons stated for rejection were lengthy and some were short. Some of the reasons stated incorporated specific documents into the decision. I would hold that the Final Decision complied with the provisions of N.C. Gen. Stat. § 150B-34(c), which only require that DHHS state the specific reason for rejection of the finding of fact made by the ALJ.

Finally, the majority opinion specifically authorizes Presbyterian Hospital North to continue in operation without a CON pending DHHS' reconsideration of this matter. The majority cites no authority for this directive, and I know of none.

I would affirm the final agency decision in this matter.