TOTAL RENAL CARE OF N.C. LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[195 N.C. App. 378 (2009)]

TOTAL RENAL CARE OF NORTH CAROLINA LLC, Petitioner v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF HEALTH SERVICE REGULATION (FORMERLY DIVISION OF FACILITY SERVICES), CERTIFICATE OF NEED SECTION, Respondent, and BIO-MEDICAL APPLICATIONS OF NORTH CAROLINA, INC., d/b/a FRESENIUS MEDICAL CARE ·OF SAINT PAULS & NEPHRO RENTALS, LLC, Respondents-Intervenors

No. COA07-1479

(Filed 17 February 2009)

**Hospitals and Other Medical Facilities— certificate of need— facility completed during appeal—appeal moot**

An appeal of a certificate of need for a kidney disease treatment center was moot where the facility was completed and became fully operational while the appeal was pending. North Carolina's Certificate of Need law does not authorize withdrawal of a certificate of need once the project or facility is complete or becomes operational.

Appeal by Petitioner from Final· Agency Decision entered 17 August 2007 by the North Carolina Department òf Health and Human Services. Heard in the Court of Appeals 30 April 2008.

*Poyner & Spruill LLP, by William R. Shenton, Thomas R. West, Pamela A. Scott, and Wilson Hayman for Petitioner-Appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General June S. Ferrell, for Respondent-Appellee.*

*Thomas & Brooks, PLLC, by Joy Heath Thomas, for Respondents-Intervenors-Appellees.*

STEPHENS, Judge.

Pursuant to the powers conferred upon it by the North Carolina Constitution, the General Assembly has enacted legislation which requires a person or entity seeking to "offer or develop a new institutional health service" to first apply for and obtain a Certificate of Need ("CON") from the Department of Health and Human Services, Division of Health Service Regulation, Certificate of Need Section ("DHHS"). N.C. Gen. Stat. §§ 131E-175 to -192 (2005) (hereinafter, "CON Law"). The CON Law does not authorize DHHS to withdraw a CON after the project or facility for which a CON was issued is complete or becomes operational. N.C. Gen. Stat. § 131E-189. In this case,

TOTAL RENAL CARE OF N.C. LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[195 N.C. App. 378 (2009)]

DHHS issued a CON to Respondents-Intervenors-Appellees Bio-Medical Applications of North Carolina, Inc., d/b/a Fresenius Medical Care of North Carolina ("BMA"), and Nephro Rentals, LLC to develop a kidney disease treatment center. Petitioner-Appellant Total Renal Care of North Carolina LLC ("TRC") appealed DHHS's decision to this Court. While the appeal was pending, BMA completed and began operating the kidney disease treatment center. Accordingly, this appeal is now moot. *See Mooresville Hosp. Mgmt. Assocs. v. N.C. Dep't of Health & Human Services*, 360 N.C. 156, 622 S.E.2d 621 (2005) (per curiam), *vacating* 169 N.C. App. 641, 611 S.E.2d 431 (2005).

## NORTH CAROLINA'S CERTIFICATE OF NEED LAW

This Court has previously and ably reviewed the history and purpose of the CON Law and the procedure involved in obtaining a CON in North Carolina. *See, e.g., Living Centers-Southeast, Inc. v. N.C. Dep't of Health & Human Services*, 138 N.C. App. 572, 532 S.E.2d 192 (2000). However, we find it useful to once again set forth the CON Law's somewhat complicated regime before addressing the merits of this appeal.

The General Assembly enacted the CON Law in 1977 after the United States Congress passed the National Health Planning and Resource Development Act of 1974 requiring states to establish certificate of need programs as a prerequisite to obtaining federal health program financial grants. *Hosp. Grp. of W. N.C., Inc. v. N.C. Dep't of Human Res.*, 76 N.C. App. 265, 267, 332 S.E.2d 748, 750 (1985). Congress repealed the Health Planning Act effective 1 January 1987, Pub. L. No. 99-660, title VII, § 701(a), 100 Stat. 3799 (1986), but the General Assembly did not repeal the CON Law. The fundamental purpose of the CON Law is to limit the construction of health care facilities in North Carolina to those that are needed by the public and that can be operated efficiently and economically for the public's benefit. *In re Humana Hosp. Corp. v. N.C. Dep't of Human Res.*, 81 N.C. App. 628, 632, 345 S.E.2d 235, 237 (1986). *See* N.C. Gen. Stat. § 131E-175.

Under the CON Law, "[n]o person shall offer or develop a new institutional health service without first obtaining a [CON] from [DHHS][.]" N.C. Gen. Stat. § 131E-178(a). A CON is defined as a "written order which affords the person so designated as the legal proponent of the proposed project the opportunity to proceed with the development of such project." N.C. Gen. Stat. § 131E-176(3). Health

TOTAL RENAL CARE OF N.C. LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[195 N.C. App. 378 (2009)]

care facilities to which the CON Law applies include: hospitals; long-term care hospitals; psychiatric facilities; rehabilitation facilities; nursing home facilities; adult care homes; kidney disease treatment centers, including freestanding hemodialysis units; intermediate care facilities for the mentally retarded; home health agency offices; chemical dependency treatment facilities; diagnostic centers; hospice offices, hospice inpatient facilities, hospice residential care facilities; and ambulatory surgical facilities. N.C. Gen. Stat. § 131E-176(9b).

DHHS normally has 90 days to review an application for a CON before it must "issue a decision to 'approve,' 'approve with conditions,' or 'deny,' " the application. N.C. Gen. Stat. § 131E-186(a). DHHS bases its initial decision upon its determination of whether the applicant has complied with the statutory criteria contained in N.C. Gen. Stat. § 131E-183(a). The statutory criteria include, among other things, documentation of the needs of the subject population, the applicant's financial and operational projections, and a demonstration that the proposed project will not result in unnecessary duplication of existing or approved health service capabilities or facilities. N.C. Gen. Stat. §§ 131E-183(a)(3), (5), and (6).

After DHHS issues its initial decision to approve, approve with conditions, or deny a CON application, "any affected person[]" may file a petition under the Administrative Procedure Act with the Office of Administrative Hearings ("OAH") for a contested case hearing before an Administrative Law Judge ("ALJ"). N.C. Gen. Stat. § 131E-188(a). If no person files a petition for a contested case hearing, DHHS must issue the CON within 35 days of its initial decision if "all applicable conditions of approval that can be satisfied before issuance of the [CON] have been met." N.C. Gen. Stat. § 131E-187(a).

If an affected person files a petition for a contested case hearing, DHHS may not issue the CON until the petition is withdrawn or until DHHS issues a final agency decision following a hearing before an ALJ. N.C. Gen. Stat. § 131E-187(b). OAH must assign an ALJ to the case within 15 days after the filing of a petition, and the parties must complete discovery within 90 days after the assignment of the ALJ. N.C. Gen. Stat. §§ 131E-188(a)(1) and (2). Within 45 days from the conclusion of the discovery period, a "hearing at which sworn testimony is taken and evidence is presented shall be held[.]" N.C. Gen. Stat. § 131E-188(a)(3). The ALJ must make a non-binding recommended decision within 75 days after the hearing. N.C. Gen. Stat. § 131E-188(a)(4). After issuing the recommended decision, OAH compiles an official record in the case, which contains:

(1) Notices, pleadings, motions, and intermediate rulings;

(2) Questions and offers of proof, objections, and rulings thereon;

(3) Evidence presented;

(4) Matters officially noticed, except matters so obvious that a statement of them would serve no useful purpose; and

. . . .

(6) The [ALJ's] decision, or order.

N.C. Gen. Stat. § 150B-37(a) (2005). OAH then forwards the record to DHHS for a final agency decision.

DHHS must issue a final agency decision within 30 days of receiving the official record from OAH. N.C. Gen. Stat. § 131E-188(a)(5). DHHS must issue a CON within five days after making the final agency decision when "all applicable conditions of approval that can be satisfied before issuance of the [CON] have been met." N.C. Gen. Stat. § 131E-187(b). Once DHHS issues the CON, the holder must make the service or equipment available or complete the project in compliance with a timetable set forth in the CON. N.C. Gen. Stat. § 131E-189(a).

DHHS may only withdraw an issued CON in three instances. First, DHHS may withdraw a CON if the holder does not submit periodic progress reports or if DHHS determines that the holder is not making a good faith effort to comply with the timetable. N.C. Gen. Stat. § 131E-189(a). Second, DHHS may withdraw a CON if the holder fails to develop the service in a manner consistent with representations made in the CON application or with any conditions DHHS placed on the CON. N.C. Gen. Stat. § 131E-189(b). Third, DHHS may withdraw a CON "if the holder of the [CON], before completion of the project or operation of the facility, transfers ownership or control of the facility, the project, or the [CON]." N.C. Gen. Stat. § 131E-189(c).

The CON Law does not authorize DHHS to withdraw a CON once the project or facility for which the CON was issued is complete or becomes operational. N.C. Gen. Stat. § 131E-189. "A project authorized by a [CON] is complete when the health service or the health service facility for which the [CON] was issued is licensed and certified and is in material compliance with the representations made in the [CON] application." N.C. Gen. Stat. § 131E-181(d). Kidney disease

TOTAL RENAL CARE OF N.C. LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[195 N.C. App. 378 (2009)]

treatment centers, the subject of the CON in this case, are not "licensed" by the State, but rather are "certified" by the federal government. *See* N.C. Gen. Stat. § 131E-176(14e) (defining a "[k]idney disease treatment center" as "a facility that is certified as an end-stage renal disease facility by the Centers for Medicare and Medicaid Services, Department of Health and Human Services, pursuant to 42 C.F.R. § 405.").

Any affected person who was a party in a contested case hearing is entitled to judicial review of all or any portion of any final decision by filing a notice of appeal within 30 days after receipt of written notice of the final agency decision. N.C. Gen. Stat. § 131E-188(b). The appeal is to this Court, and the procedure for the appeal is governed by the Rules of Appellate Procedure. N.C. Gen. Stat. § 131E-188(b). The CON Law does not provide that a person aggrieved by a final agency decision may apply to this Court for a stay of the decision, nor does the CON Law provide for an automatic stay, pending the outcome of judicial review.

## FACTS

TRC and BMA provide end-stage renal disease services at dialysis facilities across North Carolina. On 17 March 2003, TRC applied to DHHS for a CON to develop a new dialysis facility in the Town of St. Pauls, Robeson County. TRC proposed to transfer ten dialysis stations from one of its existing facilities located in contiguous Hoke County to St. Pauls. At that time, BMA operated all three of Robeson County's dialysis facilities. On 12 August 2003, DHHS "approved with conditions" TRC's application. On 9 September 2003, BMA filed a petition for a contested case hearing with OAH. In a recommended decision issued after the hearing, an ALJ concluded that DHHS erred in approving TRC's application. In a final agency decision issued on or about 20 August 2004, DHHS rejected the ALJ's recommended decision and upheld the decision to issue the CON. On 4 October 2005, this Court affirmed the final agency decision. *Bio-Medical Applications of N.C., Inc. v. N.C. Dep't of Health & Human Services*, 173 N.C. App. 641, 619 S.E.2d 593 (2005) (unpublished).

On 17 April 2006, BMA applied to DHHS for a CON to establish its own dialysis facility in St. Pauls, to be located approximately one mile from TRC's approved facility. BMA proposed to transfer ten dialysis stations from two of its existing Robeson County facilities to St. Pauls. On 22 August 2006, DHHS "approved with conditions" BMA's application. On 21 September 2006, TRC filed a petition for a con-

TOTAL RENAL CARE OF N.C. LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[195 N.C. App. 378 (2009)]

tested case hearing with OAH. In a recommended decision issued 14 June 2007, an ALJ concluded that DHHS did not err in approving BMA's application. In a final agency decision issued on 17 August 2007, DHHS adopted the ALJ's recommended decision in its entirety and upheld the decision to issue the CON.

DHHS issued the CON on 20 August 2007. The timetable set forth in the CON called for construction of BMA's facility to be complete by 8 March 2008 and for the facility to be certified by the Centers for Medicare and Medicaid Services by 31 March 2008.

On 5 September 2007, Nephro Rentals purchased the property on which it planned to construct BMA's St. Pauls facility and subsequently began constructing the facility.[1] On 19 September 2007, TRC filed a notice of appeal from the final agency decision.

On 14 December 2007, TRC filed a Petition for Writ of Supersedeas in this Court to stay the certification and operation of BMA's St. Pauls facility pending resolution of the appeal. Citing *Mooresville*, 360 N.C. 156, 622 S.E.2d 621, TRC argued, *inter alia*, that its appeal "might be held moot if no [writ of *supersedeas*] is issued." In its response to the petition, BMA asserted that construction of its St. Pauls facility was "approaching fifty percent . . . complete with in excess of $200,000 having been spent to date." This Court denied TRC's petition by order entered 7 January 2008. TRC subsequently filed a Petition for Writ of Supersedeas with the North Carolina Supreme Court. By order entered 29 February 2008, the Supreme Court denied TRC's petition. This Court heard arguments in this case on 30 April 2008.

On 18 August 2008, and citing *Mooresville*, BMA filed a motion to dismiss this appeal as moot. In support of the motion, BMA asserted that (1) the construction of its St. Pauls facility was completed in June 2008; (2) the Centers for Medicare and Medicaid Services certified the facility effective 18 August 2008; and (3) DHHS determined that the facility was "complete" as of 18 August 2008. All of BMA's assertions were supported by documents attached to its motion.

TRC responded to BMA's motion on 10 September 2008, arguing as follows: (1) the appeal is not moot because BMA is judicially estopped from arguing mootness based on BMA's prior representa-

---

1. Nephro Rentals applied with BMA for the St. Pauls CON. According to the CON application, Nephro Rentals was to acquire the property for and construct BMA's St. Pauls facility. Nephro Rentals was then to lease the building to BMA. In this opinion, we generally refer to both parties as "BMA."

TOTAL RENAL CARE OF N.C. LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[195 N.C. App. 378 (2009)]

tions to this Court in this case; (2) the Supreme Court's decision in *Mooresville* is without precedential value because that decision was issued *per curiam*; (3) the facts of *Mooresville* distinguish that case from the case at bar; (4) even if this appeal is moot, this Court should review the case under the "capable of repetition, yet evading review" and "public interest" exceptions to the mootness doctrine; and (5) BMA's motion to dismiss should be denied as untimely under Rule 37(a) of the Rules of Appellate Procedure.

## ANALYSIS

In *Mooresville*, 169 N.C. App. 641, 611 S.E.2d 431, Presbyterian Hospital ("Presbyterian") applied to DHHS in 1999 for a CON to construct a hospital 11 miles from Lake Norman Regional Medical Center ("Lake Norman").[2] DHHS issued a final agency decision denying the application, and Presbyterian appealed to this Court. While that appeal was pending, Presbyterian filed another CON application for the hospital in 2001. DHHS issued an initial decision denying the application, and Presbyterian petitioned OAH for a contested case hearing. While the appeals to both this Court and OAH were pending, Presbyterian and DHHS entered into settlement agreements resolving all disputes. As part of the settlement, Presbyterian was required to dismiss the appeal pending before this Court, dismiss the contested case pending before OAH, and withdraw the 2001 application. DHHS was required to immediately issue a CON based on updates and amendments to the 1999 application. Following a contested case hearing and a final agency decision upholding the settlement, Lake Norman appealed to this Court.

While Lake Norman's appeal was pending in this Court, and after the case was called for oral argument, Presbyterian filed a motion to dismiss the appeal as moot. In the motion, Presbyterian argued that the CON Law primarily regulates the *development* of new health services or facilities and that once a project for which a CON was issued is complete and becomes operational, the CON is no longer needed. In support of this argument, Presbyterian pointed to, *inter alia*, the inability of DHHS to withdraw a CON once a project becomes operational and a holder's duty to submit periodic progress reports during, but not after, a project's or facility's development. N.C. Gen. Stat. § 131E-189. Since construction of the hospital was completed and the hospital was operational, Presbyterian argued, the appeal was moot. This Court denied the motion on 4 January 2005.

---

2. Lake Norman Regional Medical Center was an assumed name of Mooresville Hospital Management Associates, Inc. 169 N.C. App. at 643, 611 S.E.2d at 433.

TOTAL RENAL CARE OF N.C. LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[195 N.C. App. 378 (2009)]

In an opinion issued 19 April 2005, a majority held that DHHS procedurally and statutorily erred in issuing the CON.[3] The majority remanded the case to DHHS to consider the settlement anew, but recognized and ordered as follows:

> As a final matter, we note Presbyterian Hospital North became fully operational during the pendency of this appeal. We are faced, therefore, with balancing a strict application of the provisions of the CON Act against maintaining health care services currently provided by the operating hospital. It would be imprudent to close the hospital due to procedural irregularities in light of the hardship to the community. . . . Presbyterian Hospital North may continue to operate (1) until the hospital settlement has upon remand been considered anew by DHHS following the procedures outlined above and (2) in the event a contested case hearing should occur following DHHS' initial decision, until DHHS enters a final agency decision.

169 N.C. App. at 655, 611 S.E.2d at 441. Judge Steelman dissented, concluding that DHHS did not err in issuing the CON and disagreeing with the majority's directive authorizing the hospital to continue operating without a CON, stating, "The majority cites no authority for this directive, and I know of none." *Id.* at 656-57, 611 S.E.2d at 441-42.

Presbyterian subsequently filed a petition for writ of *certiorari* in the Supreme Court seeking review of this Court's denial of Presbyterian's motion to dismiss. The Supreme Court allowed the petition for *certiorari*, 359 N.C. 634, 616 S.E.2d 540, and granted discretionary review on additional issues. 359 N.C. 634, 616 S.E.2d 541. In a *per curiam* opinion issued 16 December 2005, the Supreme Court held as follows:

> While the appeal was pending [in the Court of Appeals], [Presbyterian] obtained an operating license from DHHS. On 19 November 2004, before the Court of Appeals issued its decision, [Presbyterian] filed in that court a motion to dismiss [Lake Norman's] appeal as moot because *construction of Presbyterian Hospital had been completed* and *the hospital was fully opera-*

---

3. Although this Court did not address the motion to dismiss in the opinion, we take judicial notice of the records filed in this Court in that case. *Mason v. Town of Fletcher*, 149 N.C. App. 636, 640, 561 S.E.2d 524, 527 (" '[T]here [] seems little reason why a court should not notice its own records in any prior or contemporary case when the matter noticed has relevance[.]' ") (quoting Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 26 (5th ed. 1998)), *disc. review denied*, 355 N.C. 492, 563 S.E.2d 570 (2002).

386 IN THE COURT OF APPEALS

TOTAL RENAL CARE OF N.C. LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[195 N.C. App. 378 (2009)]

*tional.* The Court of Appeals denied the motion in an order dated 4 January 2005.

: . . .

We conclude that the Court of Appeals erred in denying [Presbyterian's] motion to dismiss as moot. The opinion of the Court of Appeals is vacated. The appeal before this Court is dismissed as moot.

360 N.C. at 157-58, 622 S.E.2d at 622 (emphasis added).

Initially, we reject TRC's argument that *Mooresville,* as a *per curiam* decision, has "little or no precedential value." "*Per curiam* decisions stand upon the same footing as those in which fuller citations of authorities are made and more extended opinions are written." *Bigham v. Foor,* 201 N.C. 14, 15, 158 S.E. 548, 549 (1931) (citations omitted).

Moreover, we discern no relevant distinctions between the facts of *Mooresville* and the facts of the case at bar. In both cases, DHHS issued a CON, and the project for which the CON was issued was completed and became operational while an appeal was pending. That the facility at issue in *Mooresville* was a hospital—the development of which, TRC argues, is "exponentially" more complex than the development of a dialysis facility—is of no moment. As stated above, the CON Law applies in equal measure to both hospitals and dialysis facilities without regard to the complexity of their development.

Regardless, we need not determine whether the facts of *Mooresville* are distinguishable, for it is not *Mooresville* but rather the CON Law itself that controls the resolution of this case. *Mooresville* merely instructs that our conclusion is correct. DHHS issued the CON to BMA; BMA completed construction of its St. Pauls dialysis facility; DHHS determined that development of the facility was complete; and the facility became fully operational. As previously stated, the CON Law does not authorize DHHS to withdraw a CON once the project or facility for which the CON was issued is complete or becomes operational. Thus, even were we to determine that DHHS erred in issuing the CON, DHHS is without authority to correct the error. Accordingly, we conclude that this appeal is moot. *Roberts v. Madison Cty. Realtors Ass'n,* 344 N.C. 394, 398-99, 474 S.E.2d 783, 787 (1996) ("A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy.").

TOTAL RENAL CARE OF N.C. LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[195 N.C. App. 378 (2009)]

We are not persuaded by TRC's argument that BMA's motion to dismiss "must be denied as untimely under N.C. R. App. P. 37(a)." Rule 37(a) provides that "[u]nless another time is expressly provided by these rules, [an application to a court of the appellate division for an order or for other relief available under these rules] may be filed and served at any time before the case is called for oral argument." N.C. R. App. P. 37(a). Citing only *State v. Brigman*, 178 N.C. App. 78, 632 S.E.2d 498, *appeal dismissed and disc. review denied*, 360 N.C. 650, 636 S.E.2d 813 (2006), TRC asserts that the motion was untimely because BMA filed the motion after this case was called for oral argument. Anticipating TRC's argument, BMA states in a footnote to its motion to dismiss that this Court should invoke Rule 2 of the Rules of Appellate Procedure to "suspend the time limit provided in Rule 37(a)[.]" *See* N.C. R. App. P. 2 ("To prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.").

*Brigman* is easily distinguishable, and TRC's reliance on that decision is unfounded. Before that case was called for oral argument, the defendant filed in this Court a motion for appropriate relief seeking a new trial on the ground that a State's witness had recanted her trial testimony. After the case was called for oral argument, the defendant filed an amended motion for appropriate relief on the ground of ineffective assistance of counsel. This Court stated that

[s]ince [the amended] motion did not amend the previous motion, nor was it timely filed [pursuant to Rule 37(a)], "we dismiss that portion of defendant's motion for appropriate relief concerning [ineffective assistance of counsel], without prejudice to defendant to file a new motion for appropriate relief in the superior court." [*State v.*] *Verrier*, 173 N.C. App. [123,] 132, 617 S.E.2d [675,] 681 [(2005)].

*Id.* at 95, 632 S.E.2d at 509. In so stating, this Court did not proclaim, as a general rule, that this Court must deny every motion filed after a case is called for oral argument as untimely. Accordingly, *Brigman* is not controlling.

Although we acknowledge that Rule 37(a) arguably provides that every motion filed after a case is called for oral argument is untimely,

TOTAL RENAL CARE OF N.C. LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[195 N.C. App. 378 (2009)]

to our knowledge neither the Supreme Court nor this Court has ever held that a motion to dismiss a case as moot must be filed before a case is called for oral argument. In fact, it is well-known that both Courts, *as a matter of routine*, rule on such motions even if the motions are filed after cases have been called for argument. *E.g., Mooresville*, 360 N.C. 156, 622 S.E.2d 621. The exclusion of moot questions from determination represents a form of judicial restraint. *In re Peoples*, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978), *cert. denied*, 442 U.S. 929, 61 L. Ed. 2d 297 (1979). As the Supreme Court has held:

> *Whenever*, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law.

*Id.* (emphasis added). "If the issues before a court or administrative body become moot *at any time during the course of the proceedings*, the usual response should be to dismiss the action." *Id.* at 148, 250 S.E.2d at 912 (emphasis added). We reject TRC's argument that BMA's motion to dismiss must be denied because the motion was not timely filed.

We also reject TRC's argument that BMA is judicially estopped from arguing mootness based upon representations BMA made to both this Court and the Supreme Court in its responses to TRC's petitions for writs of *supersedeas*. Initially, we note that TRC has not cited any authority for the proposition that a party may be judicially estopped from arguing mootness. A case either is or is not moot, and when it is, a court will normally dismiss the action. However, even assuming that a party may be so estopped, we would not apply the doctrine in this case. BMA did not urge either this Court or the Supreme Court to deny TRC's petitions for writs of *supersedeas* on the ground that it would not argue mootness in the event that its St. Pauls facility become operational during the pendency of the appeal. *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 29, 591 S.E.2d 870, 888 (2004) (stating that one apparently essential factor which typically informs the decision to apply the doctrine of judicial estoppel is whether a party's subsequent position is " 'clearly inconsistent with its earlier position' ") (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750, 149 L. Ed. 2d 968, 978 (2001)) (quotation marks omitted). Moreover, we discern no " 'threat to judicial integrity' " by concluding

TOTAL RENAL CARE OF N.C. LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[195 N.C. App. 378 (2009)]

that this appeal is moot. *Id.* at 29, 591 S.E.2d at 889 (stating a second factor which informs the decision) (quoting *New Hampshire,* 532 U.S. at 751, 149 L. Ed. 2d at 978).

Finally, we reject TRC's argument that the issues raised by this appeal fall within the "capable of repetition yet evading review" and "public interest" exceptions to the mootness doctrine. *Crumpler v. Thornburg,* 92 N.C. App. 719, 723, 375 S.E.2d 708, 711 (discussing the former), *disc. review denied,* 324 N.C. 543, 380 S.E.2d 770 (1989); *Granville Cty. Bd. of Comm'rs v. N.C. Hazardous Waste Mgmt. Comm'n,* 329 N.C. 615, 623, 407 S.E.2d 785, 789-90 (1991) (discussing the latter). TRC asserts that the issues can evade review due to the relatively brief amount of time required to construct a dialysis facility as compared to the average duration of an appeal to this Court. Undoubtedly, TRC and other end-stage renal disease service providers may face *similar* actions in *similar* situations throughout the state. However, there is no "reasonable expectation that [TRC] would be subjected to the *same action* again." *Crumpler,* 92 N.C. App. at 723, 375 S.E.2d at 711 (emphasis added) (quotation marks and citation omitted). Furthermore, we simply disagree with TRC's assertion that the issues raised by this appeal are of such "general importance" as to justify the application of the public interest exception. *Granville Cty. Bd.,* 329 N.C. at 623, 407 S.E.2d at 789-90 (quotation marks and citations omitted).

## CONCLUSION

The CON Law "reveals the legislature's intent that an applicant's fundamental right to engage in its otherwise lawful business be regulated but not be encumbered with unnecessary bureaucratic delay." *HCA Crossroads Residential Centers v. N.C. Dep't of Human Res.,* 327 N.C. 573, 579, 398 S.E.2d 466, 470 (1990). Both parties recognized during the pendency of this appeal that, as in *Mooresville,* the appeal could become moot upon the completion of BMA's facility. We must presume that the General Assembly recognized such a possibility in enacting the CON Law. Even if the General Assembly failed to recognize this possibility prior to the Supreme Court's decision in *Mooresville,* in the more than three years since that case was decided, the General Assembly has not revised the CON Law to provide for a stay of either the construction or operation of a facility for which a CON has been issued pending an appeal from a final agency decision.

While the appeal in this case was pending, BMA completed construction of its St. Pauls facility, and the facility became fully opera-

tional. Accordingly, this appeal is moot. *Mooresville*, 360 N.C. 156, 622 S.E.2d 621.

DISMISSED.

Judges HUNTER, Robert C. and STEELMAN concur.