INMAN, Judge.
*525 The appeal in this case arises from a dispute over the Department of Health and Human Services' decision that a hospital was not required to obtain a new certificate of need in order to reallocate the ratio of inpatient and emergency services on a temporary basis to meet fluctuations in demand, where the hospital did not propose to increase or decrease its facility, equipment, or expenditures. We hold that, based on the record before us, a new certificate of need was not necessary because the hospital did not add a new institutional health service, change the scope of services previously approved in a certificate of need, or fail to materially comply with the existing certificate of need.
Cumberland County Hospital System, Inc., d/b/a Cape Fear Valley Health System and Hoke Healthcare, LLC (jointly, "Cape Fear" or "Petitioners"), appeal from the Administrative Law Judge's ("ALJ's") final decision dismissing Cape Fear's contested case against the North Carolina Department of Health and Human Services, Division of Health Service Regulation, Certificate of Need Section ("DHHS" or "the Agency") and respondent-intervenor FirstHealth of the Carolinas, d/b/a FirstHealth Moore Regional Hospital ("FirstHealth") (jointly, "Respondents"). The ALJ concluded (1) that the Office of Administrative Hearings ("OAH") lacked subject matter jurisdiction to determine the controversy because the case had been rendered moot and, in the alternative, (2) that Cape Fear's petition failed to state any claim upon which relief could be granted. On appeal, Petitioners argue that the ALJ erred in each of these conclusions and in dismissing their petition.
After careful review, we conclude that the matter was not subject to dismissal on mootness grounds but that the petition was fatally deficient on the merits. Accordingly, we affirm the dismissal.
Background
In April 2012, DHHS issued a certificate of need ("CON") to FirstHealth to construct a hospital in Hoke County ("FirstHealth Hoke") with eight inpatient or "acute care" beds, one operating room, and an Emergency *526 Department ("ED") containing eight ED treatment rooms. The hospital opened in October 2013. As of February 2015, when Petitioners' appeal to this Court was filed, FirstHealth Hoke was the only hospital and the only ED in Hoke County.[1]
In its CON application, submitted in 2010, FirstHealth projected a need of 25 ED visits per day; however, according to FirstHealth, ED visits at FirstHealth Hoke have never been below 30 per day since its opening in 2013, peaking at 91 visits on Christmas Day, 2013. In 2014, the hospital continued experiencing ED visit volumes nearly four times higher than originally projected, but because it only operated eight ED treatment rooms, an increased number of patients left without being seen. In an effort to relieve this disparity, FirstHealth sent a request letter ("No Review Request") to DHHS in February 2014 seeking permission to use any available inpatient beds for overflow ED treatment on a temporary, as-needed basis. The No Review Request did not propose adding equipment or increasing the scope of services permitted by FirstHealth's CON. Cape Fear opposed FirstHealth's No Review Request in *332 comments filed with DHHS on 14 March 2014.[2]
Over Cape Fear's objection, DHHS on 21 March 2014 issued its decision ("No Review Decision") approving the No Review Request, concluding that the proposal described in FirstHealth's correspondence "is not governed by, and therefore does not currently require, a certificate of need." DHHS provided notice of its decision to Cape Fear on 10 April 2014.
Cape Fear challenged DHHS's decision in a petition filed in the OAH on 21 April 2014, commencing a contested case proceeding. FirstHealth withdrew its No Review Request from DHHS on 6 May 2014 and obtained permission from the ALJ to intervene in the proceeding on 13 May 2014. On 28 May 2014, DHHS withdrew its No Review Decision, which was the subject of Cape Fear's petition.
On 30 May 2014, DHHS and FirstHealth jointly filed a motion to dismiss the contested case proceeding. The ALJ issued a final decision on *527 21 August 2014 dismissing the matter on two alternative grounds: (1) concluding that the OAH lacked subject matter jurisdiction over the case because it was moot and (2) further concluding that Cape Fear had failed to state a claim upon which relief could be granted. Cape Fear filed timely notice of appeal.
Standard of Review
In certificate of need cases, an appeal from a final OAH decision proceeds directly to this Court. AH North Carolina Owner LLC v. N.C. Dep't of Health and Human Servs., --- N.C.App. ----, ----, 771 S.E.2d 537, 541-42 (2015) ; see also N.C. Gen.Stat. §§ 7A-29(a), 131E-188(b) (2015).
In reviewing a CON determination, [m]odification or reversal of the Agency's decision is controlled by the grounds enumerated in [N.C. Gen.Stat.] section 150B-51(b) ; the decision, findings, or conclusions must be:
(1) In violation of constitutional provisions;
(2) In excess of the statutory authority or jurisdiction of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
(6) Arbitrary or capricious."
Parkway Urology, P.A. v. N.C. Dep't of Health and Human Servs., 205 N.C.App. 529, 534, 696 S.E.2d 187, 192 (2010) (quoting Total Renal Care of N.C., LLC v. N.C. Dep't of Health and Human Servs., 171 N.C.App. 734, 739, 615 S.E.2d 81, 84 (2005) ). "The first four grounds for reversing or modifying an agency's decision ... are law-based inquiries. On the other hand, [t]he final two grounds ... involve fact-based inquiries." Id. at 535, 696 S.E.2d at 192 (quoting N.C. Dep't of Revenue v. Bill Davis Racing, 201 N.C.App. 35, 42, 684 S.E.2d 914, 920 (2009) ). "In cases appealed from administrative tribunals, we review questions of law de novo and questions of fact under the whole record test." Surgical Care Affiliates, LLC v. N.C. Dep't of Health and Human Servs., --- N.C.App. ----, ----, 762 S.E.2d 468, 470 (2014) (quoting Diaz v. Div. of Social Servs., 360 N.C. 384, 386, 628 S.E.2d 1, 2 (2006) ). In conducting de novo review, this Court considers matters anew and freely substitutes its *528 own judgment for that of the administrative body. N.C. Dep't of Env't & Natural Res. v. Carroll, 358 N.C. 649, 660, 599 S.E.2d 888, 895 (2004). In conducting "whole record" review, we must examine all the record evidence in order to determine whether there is substantial evidence to support the agency's decision. Id.
Accordingly, we review de novo the ALJ's decision granting Respondents' motion to dismiss for failure to state a claim upon which relief could be granted and dismissing the case as moot. We apply the whole record test in reviewing Petitioners' claims that the *333 ALJ failed to take all of their factual allegations as true and reached conclusions of law unsupported by the findings of fact.[3]
Analysis
I. Mootness
We first address the conclusion below that the OAH lacked subject matter jurisdiction to hear Petitioners' claim because the case was moot. Because we conclude that DHHS's withdrawal of its No Review Decision falls within at least one exception to the mootness doctrine-as a measure capable of repetition, yet evading review-we decline to dismiss the case for mootness, and we will reach the merits of this appeal.
"A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy. Thus, the case at bar is moot if [an intervening event] had the effect of leaving plaintiff with no available remedy." Roberts v. Madison Cty. Realtors Ass'n, Inc., 344 N.C. 394, 398-99, 474 S.E.2d 783, 787 (1996) (citation omitted). "[A] moot claim is not justiciable, and a trial court does not have subject matter jurisdiction over a non-justiciable claim [.]" Yeager v. Yeager, 228 N.C.App. 562, 565, 746 S.E.2d 427, 430 (2013) (citations omitted). Moreover, "[i]f the issues before the court become moot at any time during the course of the proceedings, the usual response is to dismiss the action" for lack of subject matter jurisdiction. Simeon v. Hardin, 339 N.C. 358, 370, 451 S.E.2d 858, 866 (1994) (citation omitted).
One exception to the mootness doctrine permits our courts to address on the merits an otherwise moot claim where the case is "capable *529 of repetition, yet evading review." Ass'n for Home and Hospice Care of North Carolina, Inc. v. Div. of Medical Assistance, N.C. Dep't of Health and Human Servs., 214 N.C.App. 522, 525, 715 S.E.2d 285, 288 (2011) (quoting Thomas v. N.C. Dep't of Human Resources, 124 N.C.App. 698, 705, 478 S.E.2d 816, 820-21 (1996) ).[4] Where a CON holder obtains through the administrative process an agency decision allowing it to reallocate its services, even within the scope of the existing certificate, any challenge to the agency decision would be rendered meaningless if the holder of the certificate and the agency could preclude appellate review by withdrawing the underlying request and agency decision.
The ALJ concluded in the decision below that the "capable of repetition, yet evading review" exception to the mootness doctrine was inapplicable because DHHS had withdrawn its No Review Decision and was unlikely to "issue the same decision again." We disagree, concluding that the ALJ's analysis of the exception criteria was too restrictive.
Two elements are required for the "capable of repetition, yet evading review" exception to apply: "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected *334 to the same action again." 130 of Chatham, LLC v. Rutherford Elec. Membership Corp., --- N.C.App. ----, ----, 771 S.E.2d 920, 926 (2015) (quoting Boney Publishers, Inc. v. Burlington City Council, 151 N.C.App. 651, 654, 566 S.E.2d 701, 703-04 (2002) ); see also State v. Corkum, 224 N.C.App. 129, 132, 735 S.E.2d 420, 422-23 (2012) (applying this exception to allow the appeal of a criminal defendant who had at most nine months in which to seek confinement credit from the trial court, and if unsuccessful, to file and fully litigate an appeal); *530 N.C. Council of Churches v. State, 120 N.C.App. 84, 88-89, 461 S.E.2d 354, 357-58 (1995) (where group opposed to the death penalty had sought to hold several execution vigils throughout the preceding decade, there was "every reason to believe they intend to hold such vigils at future executions").
DHHS's revocation of its No Review Decision satisfies the first element required by the exception: the challenged action was too short in its duration to be fully litigated prior to its cessation or expiration. The No Review Decision was withdrawn 37 days after Cape Fear filed its contested case, and just two days before Respondents filed their motion to dismiss the contested case petition.
Because Petitioners are deemed "affected person[s]" by statutes governing state regulation of medical facilities, see N.C. Gen.Stat. § 131E-188(c), they possessed a statutory right to file a contested case challenging the No Review Decision. See N.C. Gen.Stat. §§ 131E-188(a) - (c) ("[A]ffected person[s]" entitled to contested case hearing "[a]fter a decision of the Department to issue, deny or withdraw a certificate of need or exemption ...." (emphasis added)); see also Hospice at Greensboro, Inc. v. North Carolina Dep't of Health and Human Servs., 185 N.C.App. 1, 17, 647 S.E.2d 651, 662 (2007) ("[T]he CON Section's issuance of a 'No Review' letter is the issuance of an 'exemption' for purposes of section 131E-188(a). Accordingly ... section 131E-188(b) confers jurisdiction on this Court to hear the incident appeal.").
We also agree with Cape Fear that the second element of the exception-that the controversy is capable of repetition-is met in this case. The ALJ concluded that there is no expectation Cape Fear will be subject to the same action in the future, because that would require "FirstHealth ... to write the same or substantially same letter again, and the Agency ... to issue the same decision again." However, we are not required to find that a future dispute will involve the exact same parties and circumstances before applying the exception. See In re Jackson, 84 N.C.App. 167, 170-71, 352 S.E.2d 449, 452 (1987) (applying the exception where a school board "and other local school boards " were likely to "be repeatedly subject to orders like the one in the case sub judice " in future cases involving student disciplinary proceedings) (first emphasis added); cf. Crumpler v. Thornburg, 92 N.C.App. 719, 723-24, 375 S.E.2d 708, 711-12 (1989) (exception did not apply where more than two years had passed since plaintiff was "arrested or refused a permit for a similar demonstration") (emphasis added).
Respondents cite Total Renal Care of N.C., LLC v. N.C. Dep't of Health & Human Servs., 195 N.C.App. 378, 673 S.E.2d 137 (2009), in *531 which this Court dismissed a CON challenge as moot, to support their proposition that the "capable of repetition, yet evading review" exception can apply only if there is a reasonable expectation that Cape Fear will face precisely the same action again. Total Renal Care is distinguishable from the case at bar. It did not involve the issuance of a no-review decision. Instead, it concerned DHHS's approval of a provider's CON application to construct a new dialysis facility. Id. at 382-83, 673 S.E.2d at 140. The CON approval was challenged by a competitor. Id. The challenge became moot, however, once the new facility opened, because DHHS was "not authorize[d] ... to withdraw a CON after the project or facility for which a CON was issued is complete or becomes operational." Id. at 381, 673 S.E.2d at 140 (citing N.C. Gen. Stat. § 131E189). Therefore, because there was "no reasonable expectation that [the petitioner] would be subjected to the same action again," the Court held that the "capable of repetition, yet evading review" exception did not apply. Id. at 389, 673 S.E.2d at 145. *335 In contrast to the withdrawal of a CON, which is regulated by statute as noted in Total Renal Care, DHHS has discretionary authority to withdraw no-review decisions, as it did here. As this Court noted in Hospice at Greensboro, "[t]he 'No Review' process is not set forth in statute or rule, but is a practice DHHS developed over time," based on its understanding of this Court's prior caselaw. Hospice at Greensboro, 185 N.C.App. at 6, 647 S.E.2d at 655. There is no indication before us that DHHS plans to change its no-review process, including its ability to withdraw no-review decisions. Since DHHS will continue to accept and evaluate no-review requests, issue no-review decisions, and maintain the ability to later withdraw those decisions, it is reasonable to expect it will exercise its discretion in making those decisions in the future, potentially for the same parties before us. It is also reasonable to expect that there will be future challenges to no-review decisions as exemptions, and because Petitioners are among several types of plaintiff specifically entitled to file such challenges, see N.C. Gen.Stat. § 131E-190(h), it is reasonable to expect that future challenges will involve similarly situated parties. Despite Respondents' contention to the contrary, Total Renal Care does not require us to examine only the likelihood of the exact same action occurring in the future. The Total Renal Care Court, in support of its mootness analysis, relied on Crumpler, 92 N.C.App. at 723, 375 S.E.2d at 711. Crumpler in turn relied on In re Jackson, 84 N.C.App. at 170-71, 352 S.E.2d at 452 -a decision that, as noted above, considered similarly situated parties in applying the "capable of repetition, yet evading review" exception to the mootness doctrine. *532 Furthermore, this Court has previously declined to extend the mootness doctrine to a case in which the no-review process was exercised by DHHS. In Hospice & Palliative Care Charlotte Region v. N.C. Dep't of Health & Human Servs., 185 N.C.App. 109, 648 S.E.2d 284 (2007), a hospice care provider received a favorable no-review decision from DHHS, advising that its proposal to open a new "branch office" did not require a new CON. Id. at 110-11, 648 S.E.2d at 285. That decision was subsequently overturned by a final Agency decision. Id. However, five days after receiving the initial no-review decision, and four days before the contested case was filed, the provider applied for and received a license to open the branch office, which it then did. Id. On appeal, the provider argued that the case became moot once the new office was "properly licensed and fully operational." Id. This Court rejected the "broad proposition" that the mere fact of licensure and subsequent office opening mooted the contested case and prevented judicial review to determine whether the action at issue (opening a branch office) was in fact a new institutional health service. Id. at 113-14, 648 S.E.2d at 287. Dismissing the appeal as moot "would accelerate the unlawful development of new institutional health services, encouraging health service providers to make questionable projects 'fully operational' before an 'affected party' has time to challenge the action. " Id. at 113, 648 S.E.2d at 287 (emphasis added).
A conclusion that this case is moot without exception would essentially immunize DHHS from court review of any future no-review decision that it subsequently withdraws. The General Assembly clearly intended to enable certain parties to challenge DHHS exemptions, which we have held include no-review decisions. See N.C. Gen.Stat. § 131E-188(a), (c) ; Hospice at Greensboro, 185 N.C.App. at 17, 647 S.E.2d at 662. DHHS cannot evade court review merely by rescinding such decisions amid pending litigation. This would nullify the statutory language granting a right of action to the enumerated "persons aggrieved" who believe a particular no-review decision violates the CON law. Accordingly, we hold that DHHS's discretionary withdrawal of a no-review decision is an action capable of repetition, yet evading review, and therefore Cape Fear's challenge to the No Review Decision at issue in this case was improperly dismissed as moot.
Review on the Merits
Petitioners argue that the ALJ erred in dismissing their case for failure to state a claim upon which relief could be granted pursuant to *533 *336 Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.[5] we disagree because petitioners have not poINTED TO ANY STATUTORY language showing, under the facts presented, that FirstHealth's No Review Request required a new CON, or exceeded or invalidated its existing CON.
A. New Institutional Health Service
First, Petitioners claim that the changes proposed in FirstHealth's No Review Request amounted to a "new institutional health service," requiring a new CON pursuant to N.C. Gen.Stat. § 131E-178(a). Specifically, Petitioners allege that the temporary use of inpatient beds for ED treatment should be considered a new institutional health service under N.C. Gen.Stat. § 131E-176(16)(e). We disagree, because the proposed changes in service do not fall within the statutory definition of a "new institutional health service."
"Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning." Burgess v. Your House of Raleigh, Inc., 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990) (citation omitted). Moreover, "an agency's interpretation of a statute that it is tasked with administering should be accorded some deference by the reviewing tribunal." AH North Carolina Owner LLC v. N.C. Dep't of Health & Human Servs., --- N.C.App. at ----, 771 S.E.2d at 547.
"No person shall offer or develop a new institutional health service without first obtaining a certificate of need[.]" N.C. Gen.Stat. § 131E-178(a). Section 131E-176(16)(e) defines a new institutional health service, in part, as:
*534 A change in project that was subject to certificate of need review and for which a certificate of need was issued, if the change is proposed during the development of the project or within one year after the project was completed. For purposes of this subdivision, a change in a project is a change of more than fifteen percent (15%) of the approved capital expenditure amount or the addition of a health service that is to be located in the facility, or portion thereof, that was constructed or developed in the project.
N.C. Gen.Stat. § 131E-176(16)(e).
Petitioners argue that the first sentence in the above language requires a new CON if any change is proposed to a project within one year after the project's completion. The second sentence, however, defines "change in project" in narrower and explicit terms: either (a) deviation of more than fifteen percent of the approved capital expenditure, or (b) addition of a health service in the facility.[6]
*337 The ALJ's findings that FirstHealth's No Review Request did not propose (a) a change in expenditures, or (b) the addition of a new health service, are supported by competent evidence in light of the whole record, and those findings in turn support the ALJ's legal conclusion that FirstHealth did not propose a new institutional health service requiring a CON.
N.C. Gen.Stat. § 131E-176(9a) defines "health service" as "an organized, interrelated medical, diagnostic, therapeutic, and/or rehabilitative activity that is integral to the prevention of disease or the clinical management of a sick, injured, or disabled person." Rather than proposing the addition of a new "health service," FirstHealth merely sought to expand, on an as-needed and temporary basis, its capacity to offer the same ED services it had always provided to address an overflow issue. The expansion of a presently offered health service is not equivalent to the addition of a new health service. See *535 Cape Fear Mem'l Hosp. v. N.C. Dep't of Human Resources, 121 N.C.App. 492, 494, 466 S.E.2d 299, 301 (1996) (in enacting the CON law, "the legislature clearly did not intend to impose unreasonable limitations on maintaining ... or expanding ... presently offered health services" (emphasis in original)).
In conjunction with this argument, Petitioners allege that the ALJ erred by not treating all of their factual allegations regarding the nature of FirstHealth's No Review Request as true. See Burgess, 326 N.C. at 209, 388 S.E.2d at 136 ("In ruling upon a Rule 12(b)(6) motion, the trial judge must treat the allegations of the complaint as admitted."). Specifically, they contend that the ALJ failed to take the following allegations as true: (1) that "the Agency did not limit the length of time that FirstHealth could use its acute care beds as ED beds," and (2) that "the Agency failed to limit the number of acute care beds[.]"
There is nothing in the final decision indicating that the ALJ did not treat as true the allegations that there was no specific limit on the time or number of beds to be used. Petitioners infer that because neither FirstHealth nor DHHS specified a concrete limit on the number of inpatient beds to be used as ED overflow or the length of time that this practice could continue, DHHS essentially gave FirstHealth permission to permanently convert any number of its inpatient beds into ED beds. While the ALJ was required to treat all factual allegations as true, it was not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs., 174 N.C.App. 266, 274, 620 S.E.2d 873, 880 (2005).
Petitioners' inference is not reasonable in light of the whole record; therefore, the ALJ was not required to accept it as true. See id. As the ALJ noted, the No Review Request specifically stated that the proposal "will be temporary while FirstHealth considers other long-term actions[.]" Furthermore, the ALJ correctly found that the No Review Decision "specifically referenced the fact that this proposal by FirstHealth was temporary." These findings are supported by substantial evidence, and the mere absence of a specific time limit does not mean that FirstHealth's proposal was not a temporary one.
Accordingly, we affirm the ALJ's legal conclusion that FirstHealth's proposal did not constitute a "new institutional health service" requiring a CON.
B. CON Scope
Petitioners also contend that DHHS's No Review Decision violated N.C. Gen.Stat. § 131E-181(a), which provides that "[a] certificate of need *536 shall be valid only for the defined scope, physical location, and person named in the application." Because FirstHealth's adjustment in services does not exceed the scope of its CON, we affirm the ALJ's decision overruling this argument.
Petitioners maintain that the Agency's No Review Decision "permitted FirstHealth to operate outside the scope of its CON, [by] allowing FirstHealth to use any or all of its acute care beds as ED beds for an undefined length of time." This, Petitioners claim, violated the plain language of N.C. Gen.Stat. § 131E-181(a), thereby requiring a new CON. We disagree.
*338 Again, we conclude that Petitioners' inferences are unwarranted in light of the whole record. FirstHealth's 2012 CON approved a hospital with eight acute care beds, one operating room, 24-hour ED, with eight ED rooms, diagnostic imaging, and laboratory and pharmacy services. FirstHealth built the hospital according to the terms of the CON. The No Review Request explicitly stated that FirstHealth only sought to use whichever inpatient beds were "available" (indicating a continuation of inpatient services) for ED treatment on a temporary basis "while FirstHealth considers other long-term actions to address the dramatic increase in [ED] visits."
Nothing in the CON law restricts the type of action FirstHealth proposed in its No Review Request, i.e., temporary use of unoccupied inpatient beds as ED treatment beds pending a long-term solution. Contrary to Cape Fear's contention that the No Review Decision permitted FirstHealth to "operate inter alia a freestanding ED" with no inpatient beds, FirstHealth never stated or implied it intended to stop offering acute care services at FirstHealth Hoke. The No Review Request merely proposed a temporary measure to ameliorate an urgent problem, in a way that would not circumscribe its inpatient services but would help alleviate emergency room overcrowding.
Accordingly, we affirm the ALJ's conclusion that FirstHealth's proposal did not exceed the scope of its CON.
C. Material Compliance
Finally, Petitioners allege that the Agency's No Review Decision permitted FirstHealth to operate a "materially different facility" from that described in its original CON, in violation of N.C. Gen.Stat. § 131E-181(b). We disagree.
*537 Section 131E-181(b) provides in pertinent part that "[a] recipient of a certificate of need ... is required to materially comply with the representations made in its application for that certificate of need." N.C. Gen.Stat. § 131E-181(b). In assessing whether the recipient of a CON is operating a service which materially differs from representations made in its application, section 131E-181(b) specifies "cost increases to the recipient, or its successor," as a relevant factor.
We note again that FirstHealth's No Review Request did not propose any new expenditures or change in operating costs in order to implement the short-term measure it described. Further, neither the No Review Request nor the Agency's decision suggested that FirstHealth intended to stop offering inpatient services altogether at FirstHealth Hoke, and contrary to Petitioners' repeated assertions, it is clear that both FirstHealth and DHHS understood the proposal to be a stopgap fix rather than a permanent solution.
We conclude that FirstHealth's proposal in the No Review Request materially complied with the representations made in the 2012 CON, and Petitioners have failed to state a claim under N.C. Gen.Stat. § 131E-181(b).
Conclusion
For the foregoing reasons, we affirm the ALJ's final decision and order of dismissal.
AFFIRMED.
Judges STROUD and McCULLOUGH concur.

As noted in the ALJ decision, Petitioner Hoke Healthcare already had a CON to develop its own hospital in Hoke County, but that hospital had not yet opened.

Cape Fear has unsuccessfully opposed FirstHealth in two other recent cases. See Surgical Care Affiliates, LLC v. N.C. Dep't of Health & Human Servs., 2014 WL 5770252 (Oct. 21, 2014) (unpublished), disc. rev. denied, --- N.C. ----, 772 S.E.2d 860 (2015) ; Cumberland Cnty. Hospital Sys., Inc. v. N.C. Dep't of Health & Human Servs, ---N.C.App. ----, 764 S.E.2d 491 (2014), disc. rev. denied, --- N.C. ----, 772 S.E.2d 861 (2015).

While Petitioners make a passing reference to the "arbitrary or capricious" nature of the final decision, they do not support that argument with citation to any legal authority. Therefore, we deem this contention abandoned. See N.C. R.App. P. 28(b)(6) (2008) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").

Petitioners argue that three established exceptions to the mootness doctrine apply in the case at bar: the "capable of repetition, yet evading review" exception; a "public interest" exception, see N.C. State Bar v. Randolph, 325 N.C. 699, 701, 386 S.E.2d 185, 186 (1989) (even if moot, a court may "consider a question that involves a matter of public interest, is of general importance, and deserves prompt resolution"); and a "voluntary cessation" exception, see Shell Island Homeowners Ass'n v. Tomlinson, 134 N.C.App. 286, 293, 517 S.E.2d 401, 405 (1999) (noting that "a defendant's voluntary cessation of a challenged practice does not deprive a ... court of its power to determine the legality of the practice." (citation omitted)). Because it is sufficient for this Court to conclude that any one of the mootness exceptions applies, we need not address Petitioners' alternative arguments on the question of mootness. See In re Brooks, 143 N.C.App. 601, 605-06, 548 S.E.2d 748, 751-52 (2001) (where state officials "argue[d] that at least three of the five exceptions to the mootness doctrine appl[ied]," the court "thoroughly reviewed the officers' arguments and [found] that at least one of the exceptions applies, the public interest exception.").

Petitioners also argue that they possess an absolute statutory right under N.C. Gen.Stat. § 131E-188(a) to a full evidentiary hearing and that it was thus improper for the ALJ to grant Respondents' Rule 12(b)(6) motion. We find guidance in Cumberland County Hosp. System, Inc., ---N.C.App. at ----, 764 S.E.2d at 495. In that case, Cape Fear argued, as it does now, that the ALJ erred in granting a dispositive prehearing motion because Cape Fear possessed an absolute right to a contested case hearing under section 131E-188(a). This Court disagreed, holding that section 131E-188(a) must be considered in light of Chapter 150B of the General Statutes. The Court noted that among the applicable provisions in Chapter 150B, N.C. Gen.Stat. § 150B-23(a)'s "enumeration of specific requirements for a contested case petition indicates that the right to an evidentiary hearing is contingent upon a valid petition. " Id. (emphasis added). The Court also observed that N.C. Gen.Stat. § 150B-33(b)(3a) provides that an ALJ may "[r]ule on all prehearing motions that are authorized by G.S. 1A-1, the Rules of Civil Procedure." Id. Respondents' motion to dismiss pursuant to Rule 12(b)(6) in this case, like the respondents' motion for summary judgment in Cumberland County I, is a prehearing motion authorized by the Rules of Civil Procedure. Accordingly, as before, we reject Cape Fear's argument that the ALJ lacked authority to rule on a dispositive prehearing motion. See id. ("Cape Fear's position would lead to the absurd result that an appellant would have an absolute right to a full evidentiary hearing, even if its petition were devoid of any allegations that might justify relief.").

Petitioners point to language in DHHS's No Review Decision to argue that "the Agency includes other changes in its own definition [of a 'change in project'] and does not limit the changes to those enumerated." We note that DHHS is bound by the statutory definition, which it has no authority to expand. See High Rock Lake Partners, LLC v. N.C. Dep't of Transp., 366 N.C. 315, 319, 735 S.E.2d 300, 303 (2012) (a state administrative agency " 'possesses only those powers expressly granted to it by our legislature or those which exist by necessary implication in a statutory grant of authority)' " (quoting Lee v. Gore, 365 N.C. 227, 230, 717 S.E.2d 356, 359 (2011) ).